**Virginia L. COOK as next friend and guardian of her minor son James Perry Cook, Appellee,**

v.

**Gayle Franklin COOK, Appellant.**

Court of Appeals of Tennessee, Western Section.

June 6, 1977.

Certiorari Denied by Supreme Court Dec. 5, 1977.

James F. Schaeffer, Memphis, for appellant.

Ashley, Ashley & Lawson, Dyersburg, for appellee.

MATHERNE, Judge.

In this lawsuit the nature and extent of an oral trust is to be declared. The trust is then to be impressed upon the proceeds of a life insurance policy on the life of the deceased settlor, to be administered by a trustee approved by the court.

## I.

On a prior appeal this Court found that the proceeds of the insurance policy was impressed with an oral trust and remanded for a determination of the terms of the trust. On petition for certiorari the Supreme Court, in *Cook v. Cook* (Tenn.1975) 521 S.W.2d 808, generally agreed with the conclusions reached by this Court and made the following statement on how the lawsuit would be handled on remand:

> We remand this case to the Chancery Court in Union City, for further hearing under the following guidelines:

> a. The entire record in this cause will be deemed and treated as a part of the record on remand, without the necessity for recalling any witness, rereading any deposition, or re-introducing any document.

> b. Plaintiff will have the right to recall any witness for further examination.

> c. Defendant will have the right to recall any witness for further cross-examination.

> d. Either party will have the right to call any additional witness.

> The Chancellor shall insure a full investigation into this controversy to the end that the precise nature and extent of the trust be developed and declared.

> It being evident that there is hostility between Gayle Franklin Cook, the appointed (but not qualified) guardian, and Virginia L. Cook, mother and natural guardian, and it being further evident that there is a possibility of a conflict of interest on the part of Gayle Franklin Cook, this Court directs that the Court appoint a disinterested person to serve as guardian pendente lite or may cause the insurance proceeds to be paid into the Registry of the Court, to be managed and invested, pendente lite, under the direction and supervision of the Court. Upon the determination of the precise terms of the trust, the Court will appoint a permanent guardian, not handicapped by any conflict, hostility or incompatibility.

> As modified and amplified, the judgment of the Court of Appeals is affirmed.

Upon remand the chancellor ordered the defendant, Gayle Franklin Cook, the party to whom the proceeds of the life insurance policy had been paid, to pay the funds in to the clerk and master. The defendant did on July 23, 1975 pay in to the clerk and master the sum of $64,357.22 as the balance of the funds remaining in his hands.

After the hearing, the chancellor in his final decree appointed the clerk and master special guardian of the minor, James Perry

Cook. The chancellor did not find and declare the precise nature and extent of the oral trust as ordered by the Supreme Court. Instead, the chancellor set up a trust, as follows:

The Court further found said Special Guardian shall take possession of, hold and administer said trust fund, under the terms as set forth as follows and shall invest and reinvest the same for the benefit of said minor in such manner as authorized and approved for the investment of fiduciary funds by appropriate statute, and shall pay the net income, after deducting any expense and guardian's fees allowed by the Court, to or for the benefit of said minor for his support, maintenance, welfare and education until such time as said minor ward shall attain the age of majority, at which time said guardianship shall terminate and the balance of said trust fund and all accumulated and unexpended revenues therefrom shall be paid over to said James Perry Cook pursuant to and in accordance with the proper orders of this Court made and entered at such time.

Upon proper application of the Guardian or other proper person charged with the care, custody and control of said minor during the continuation of said guardianship, encroachments upon the corpus of said trust funds may be allowed by proper orders of this Court for the support, maintenance, welfare and education of such minor, and provided further, that upon any such application for encroachment being made, the Court, in its sound discretion, may require notice of such application be given to defendant, Gayle Franklin Cook, in order to allow him to be heard on the issue of the advisability of allowing an encroachment upon the trust fund corpus.

The chancellor further found that the defendant as trustee had wrongfully spent $17,011.97 in payment of a debt of the settlor; he had failed to pay in to the clerk and master $433.75 of the trust funds; he had failed to properly invest trust funds with a resulting loss of $1,500.00 interest, all of which sums he ordered the defendant to pay to the clerk and master. The chancellor did allow the defendant trustee credit for a total of $3,251.33 paid out by the trustee.

The defendant trustee appeals.

II.

The plaintiff filed a motion to strike the bill of exceptions because it was not filed in accordance with T.C.A. §§ 27–110 and 27–111.

The bill of exceptions bore the certificate of the court reporter. It was not approved by the filing party, defendant. The bill of exceptions was left with the clerk and master within the time allowed for filing. The filing party left with the clerk and master a proposed order for the chancellor to sign showing that the bill of exceptions had been tendered and was approved by the chancellor. On the second page of the order was a certificate that the filing party had mailed a copy of the order to the opposing party. The chancellor, after the expiration of ten days, signed the order approving the bill of exceptions.

The plaintiffs argue that the copy of the proposed order for the chancellor to sign did not constitute notice, and the certificate did not meet the statutory requirement that the filing party certify that notice of filing had been given the opposing party. We do not agree with the plaintiff. The order, copy of which was received by the plaintiff, showed that the bill of exceptions had been tendered. This was notice to the plaintiff and she had ten days within which to object to any portion of the bill of exceptions. This form of notice is not a good one and should not be followed. The statute, however, does not prescribe the form of the notice nor of the certification of notice. We hold that the bill of exceptions was properly filed and the motion to strike the bill of exceptions is overruled.

III.

On August 19, 1975, a hearing was had before the chancellor on the nature and

extent of the oral trust. Proof was taken over a period of two days.

The defendant Gayle Franklin Cook testified that his brother, the settlor, stated to him that he was changing the beneficiary on his life insurance policy from his wife, Virginia Cook, to Gayle Franklin Cook. The defendant stated that his brother said that he did not want his wife to have any of the money from the insurance policy. He stated that the settlor told him to use the money to pay the settlor's debts, to set the settlor's step-son, William Baker, up in a farming operation, and to use the rest for the benefit of the settlor's son, James Perry Cook. The settlor further stated that if anything happened to Gayle Franklin Cook then the money was to be handled the same way by the settlor's other brother, John Cook.

John Cook testified to the same terms of the trust. He stated that he agreed to handle the money as requested by the settlor in the event of death or inability on the part of Gayle Franklin Cook. John Cook further testified that the settlor told him that should the minor beneficiary die before the trust terminated, the balance was not to go to the heirs of the minor, but would go to the heirs of the settlor. He stated that the settlor made this condition because he did not want his wife, the mother of the minor beneficiary, to have any of the money under any condition.

Carloss Johns, a farm implement dealer and second cousin of the settlor, testified that the settlor told him that he had named Gayle Franklin Cook as the beneficiary under the life insurance policy. He stated that the settlor told him that he had instructed Gayle Franklin Cook to pay the settlor's debts first, to set William Baker up in a farming operation and to spend the rest on the settlor's minor son as it should be spent.

Virginia Cook, the divorced wife of the settlor and the mother of the minor beneficiary, testified that she knew the beneficiary of the life insurance policy had been changed from her to Gayle Franklin Cook. She stated that the settlor told her he did that to prevent her from getting any of the money. She said the settlor told her that the entire amount of the policy proceeds were to be used by Gayle Franklin Cook for the benefit of the minor, James Perry Cook.

William Baker, the twenty-three year old step-son of the settlor, testified that the settlor told him that he did not want Virginia Cook to have any of the money from the insurance policy. He testified that the settlor told him that Gayle Franklin Cook was the beneficiary and he would first pay all debts owing by the settlor, set William Baker up in a farming operation, and the rest would go to the minor son of the settlor.

## IV.

When testing an oral trust it is important to take note of the relationship between the parties and to thereby weigh the reasonableness of the terms of the trust as orally related. The record establishes beyond a reasonable doubt that the settlor and his brothers Gayle Franklin Cook and John Cook enjoyed a close, confidential, and concerned feeling, each for the welfare of the other. The only testimony to the contrary is that of Virginia Cook, who testified to the effect that the settlor and Gayle Franklin Cook could not talk together without becoming upset with one another to the point of being antagonistic toward each other. Had her view of that relationship been correct, it appears that she could have produced some independent evidence of the fact. The record establishes that the settlor and his former wife, Virginia Cook, had a rather strained marriage that ended in divorce with considerable post decree litigation. The relationship between those parties was not good. The record establishes that the relationship between Gayle Franklin Cook and John Cook with the minor beneficiary are good. If some one was to be named as the party to spend funds for the benefit of the minor, there is no showing in the record but that Gayle Franklin Cook and John Cook would be that party; according to the proof, the settlor's selection was reasonable. The step-son William

Baker was very close to his step-father, the settlor. The step-son is almost totally estranged from his mother, Virginia Cook. William Baker, after finishing high school, worked for and with the settlor in a farming operation. On the year of the settlor's death, 1972, the two of them farmed about 1100 acres of land. There was no formal or informal partnership agreement between them. It was a father and son operation, with each apparently happy and pleased with the performance of the other. Considering the work and performance of William Baker, it was a very natural thing for the settlor, who apparently had not been able to pay William much, to be concerned for William's welfare and to include him as a party to benefit from the proceeds of the insurance policy.

We conclude that the relationship of the parties would dictate that it was reasonable for the settlor to place the funds in the hands of his brother Gayle Franklin Cook with instructions that the money be used to pay the settlor's debts, set William Baker up in a farming operation, and use the remainder for the benefit of the settlor's only son. There is not one thing that is strained or unreasonable about the naming of Gayle Franklin Cook nor of the instructions given to him.

We hold that the object of the trust is that the proceeds of the insurance policy be used for the three purposes above stated. The chancellor erred in holding that the entire proceeds would be used for the benefit of James Perry Cook. We further hold that the duty of carrying out the terms of the trust was placed on Gayle Franklin Cook. We further hold that the trust thus imposed upon Gayle Franklin Cook was a personal trust growing out of the confidence and trust the settlor had in the named trustee. The proven terms of the trust render it personal, in that it was left to the discretion of the trustee to decide in what manner and to what extent the settlor's step-son, William Baker, was to be set up in a farming operation. The terms of the trust also left it to the discretion of the named trustee as to how the remaining funds would be used for the benefit of the settlor's minor son.

We further hold that the trust will terminate upon James Perry Cook reaching the age of 18 years. At that time the entire corpus will be paid over to him.

It is obvious from the record that the settlor did not want his former wife, Virginia Cook, to share in any of the proceeds from the insurance policy. One witness, John Cook, testified that the settlor told him that if the beneficiary James Perry Cook died before the trust terminated, he wanted the corpus to go to his, the settlor's, heirs. Gayle Franklin Cook stated that he did not know what the settlor wanted done in that event. The attorney for Gayle Franklin Cook asked the chancellor for permission to let Gayle Franklin Cook explain that answer, but the chancellor refused. If Gayle Franklin Cook had testified as did John Cook, we would not, under the entire record, uphold that portion of the oral trust, because the proof would not be sufficient to allow these two brothers who were named as trustee and successor trustee to place themselves in the position of contingent beneficiaries of the trust estate. We therefore hold that the suggested disposition of the corpus should James Perry Cook die before the trust terminates is not established by the record.

## V.

■ On November 7, 1972, the trustee received a check for the proceeds of the life insurance policy in the amount of $76,111.25. The trustee purchased a $20,000 certificate of deposit at the Bank of Troy and placed the balance of $56,111.25 on checking account with that bank. The certificate of deposit was made payable to Gayle F. Cook or John W. Cook, or the survivor; and the checking account was in the name of both. The trustee proceeded to harvest and sell the 1972 crops of the settlor. He qualified as executor of his brothers estate in the probate court of Dyer County. It was the opinion of the trustee that he could settle all debts, carry out the terms of the trust and not have to touch the

$20,000 certificate of deposit. The trustee filed annual income tax returns with the federal government which reflect that he treated the funds as trust funds. There is no proof that the trustee has himself used any of the trust funds, nor has he used any amount thereof other than as authorized by the terms of the trust.

The plaintiff, Virginia Cook, complains because the trustee paid from trust funds a debt of $17,011.97 owing by the decedent to the Bank of Trimble. She also complains that the trustee-executor gave to her son, William Baker, used farm machinery and equipment of a value of between $15,000 to $20,000 out of the estate of the decedent. The chancellor did not pass upon the disposition made of the farm machinery, but ordered the trustee to refund to the trust account the $17,011.97, plus interest.

The will of the settlor left his entire estate to his minor son, James Perry Cook. The trustee explained that in carrying out the trust provision that he set William Baker up in a farming operation, he deemed it economically prudent to set him up in farming with machinery owned by the decedent and to pay off the debt on the machinery with trust funds. This reasoning is not challenged by proof to the contrary. Where a trustee has honestly and prudently carried out his duties under the trust, he cannot properly be surcharged for expenditures of trust funds. Compare *Dietz v. Mitchell* (1874) 59 Tenn. 676; *Gibson County v. Fourth and First National Bank*, 20 Tenn.App. 168, 96 S.W.2d 184. William Baker testified that he was satisfied with what he received under the terms of the trust. That phase of the trust has been executed and is terminated.

There is no showing in this record upon which to base a charge against the executor-trustee that he bled the estate for the benefit of the trust. The chancellor erred in ordering the trustee to refund the $17,011.97, plus interest, into the trust fund. We do not here prejudge the probate court of Dyer County in its administration of the estate of the settlor. If that estate proves to be insolvent, or, if for any other reason

that court deems it necessary to surcharge the trustee-executor for the value of the machinery given to William Baker, allowing credit for estate debts paid out of the trust, those issues are for determination by that court.

## VI.

The chancellor ordered the defendant trustee to pay $1,500 into the trust fund as interest which should have been earned on trust funds during a period of about five or six months. It is true that where a trust fund cannot be applied either immediately or within a short time to the purposes of the trust, it is the duty of the trustee to invest the fund in a proper interest bearing account. *Linder v. Officer* (1940) 175 Tenn. 402, 135 S.W.2d 445.

As heretofore noted the defendant invested $20,000 of the trust fund in a certificate of deposit. The balance of about $56,000 of the insurance money was placed on checking account and remained there until the defendant was sued in this lawsuit. Upon being sued and enjoined from spending the money, the defendant deposited the $56,000 in a savings account on February 9, 1973. The $56,000 did not draw interest for that period of three months. The defendant explained that he was gathering the crops of the settlor, marshaling assets of the estate and determining how much the estate was indebted. He did not know how much of the trust fund would be needed for the payment of the debts of the decedent. The first and foremost duty placed on the defendant under the trust was to pay the debts of the settlor. We hold that the defendant is not, under the circumstances, liable for interest during that three month period.

The other period complained of is a period from May 15, 1975, until the funds were paid in to court on July 23, 1975, or two months and eight days. The amount of trust funds not drawing interest during that period was $64,357. Interest at 5% would amount to $268.15 per month, or $8.93 per day. We do not understand from

the record why the money was removed from an interest bearing account during this period of time. We therefore agree with the chancellor that the trustee is chargeable with interest at 5% per annum on $64,357.00 for two months and eight days, or a total of $607.74.

We agree with the chancellor that the defendant is to pay into the trust fund the sum of $433.75 which he failed to pay in to court. The record reveals this was an oversight on the part of the defendant and we do not charge him with interest on that amount.

The defendant testified that all known debts of the settlor have been paid except a $300.00 attorney fee owing by the estate. It appears that the first purpose of the trust has been met. This can not be definitely stated to be the case, however, until the estate is fully administered in the Probate Court of Dyer County.

We should here note that the first decree of the chancellor, later appealed to this Court and the Supreme Court, dissolved the injunction restraining the defendant from expending any of the trust funds. The defendant testified that he was advised by the lawyer then representing him that he could proceed with the expenditures of trust funds, which he did.

The trustee submitted the following accounting of trust funds:

Cook vs. Cook

RECEIPTS AND DISBURSEMENTS

August 19, 1975

Receipts

| 11-11-72 | Insurance Proceeds | $76,111.25 |
| 1973 | Interest Income—All Sources | 3,707.20 |
| 1974 | Interest Income—All Sources | 4,350.33 |
| 1975 | Interest Income—Estimated | 457.49 |
| | TOTAL RECEIPTS | $84,626.27 |

Disbursements

| 12-12-72 | Abernathy's Motor Cycle Sales | 231.00 |
| 4-13-74 | Internal Revenue Service 1973 Taxes | 255.00 |
| 4-13-74 | Internal Revenue Service Estimated 1974 Taxes | 255.00 |
| 11-19-74 | Farmer's Bank of Trimble Indebtedness Payoff | 17,011.97 |
| 12-20-74 | Trade-in Difference—Second Motorcycle | 229.83 |
| 1975 | Internal Revenue Service— Additional 1974 Income Tax | $ 117.00 |
| 4-14-75 | Internal Revenue Service— Estimate of 1975 Income Tax | 372.00 |
| 5-14-75 | Elam, Glasgow, Tanner and Acree Attorney's Fees | 1,357.00 |
| 5-15-75 | Gayle F. Cook—Reimbursements for Copies | 6.50 |
| 5-15-75 | Gayle F. Cook | 433.75 |
| 7-23-75 | Clerk and Master— Chancery Court | 64,357.22 |
| | TOTAL DISBURSEMENTS | $84,626.27 |

We approve that accounting and all disbursements shown, with the exception of "estimated" interest income for 1975, and on the further condition that the trustee pay in to the trust fund the $433.75 and the $607.74 heretofore found as owing by him.

## VII.

We must now determine if the chancellor erred in removing the trustee. We note that life insurance may be made payable to a trustee to be named as beneficiary in the policy and the proceeds of such insurance shall be paid to such trustee and shall be held and disposed of by the trustee as provided in a trust agreement made by the insured during his lifetime. T.C.A. § 35–620; see also T.C.A. § 35–602.

A trustee may be removed by motion, T.C.A. § 35–108; by the petition of a beneficiary for grounds stated by statute, T.C.A. § 35–109; and by the court's own motion for any ground stated in T.C.A. § 35–109, *Bailey v. Rice* (1903) 1 Tenn.Chanc.App. 645; or a court of chancery may remove a trustee for any good cause shown, *Maydwell v. Maydwell* (1916) 135 Tenn. 1, 185 S.W. 712. A court may, instead of removing the trustee, require of him a bond as will effectually protect the interests of the parties. T.C.A. § 35–113, *Faust v. Levy* (1880) 72 Tenn. 320.

As heretofore shown the trustee before the court is not guilty of fraud as charged in the complaint; he is not guilty of refusing to carry out the term of the trust as charged; he is not guilty of misappropriating trust funds as charged; and he is not guilty of failure to account, except for the item of $433.75, which is an admitted error and the item of $607.74 interest.

The settlor placed a high duty of personal responsibility on the named trustee. It is obvious that the settlor did not want the clerk and master to take care of the needs of his minor son, nor to set William Baker up in a farming operation. Those duties were placed in an individual in whom the settlor had every confidence, and in the event of that person's death or inability another individual was named. The trust imposed requires a personal relationship between the two named individual beneficiaries and the trustee so that the intent of the settlor could be accomplished. The record reveals a good personal relationship between the trustee and both individual beneficiaries; there is no hostility upon which to base the removal of the trustee.

There is hostility on the part of the plaintiff, Virginia Cook, the mother of the beneficiary James Perry Cook. This hostility has been made evident by the actions, attitude and accusations of Virginia Cook, rather than by the trustee. Virginia Cook filed this lawsuit within a few weeks of the date the trustee received the money from the insurance company, wherein she makes grave and serious charges which she failed to prove. She also immediately sued the defendant as executor of the estate of the decedent claiming a year's support for the minor son of the parties. It was the trustee's duty to defend these lawsuits. We see no reason for an honest and responsible trustee to be hounded out of his position of performing a trust personal to him and the beneficiary because of the incessant advancement of unfounded claims and charges by some third party, even though that third party be the mother of the minor beneficiary. The plaintiff has tried for five-years to place some blame on this trustee; she has totally failed.

We hold the chancellor erred in removing the trustee and in naming the clerk and master as special guardian.

The parties have argued before this court whether or not the prior opinion of the Supreme Court ordered the chancellor to appoint a guardian other than the mother or the defendant trustee. As we read that opinion we do not find an intent to so direct the chancellor on the naming of the permanent trustee or guardian. That court did *direct* the chancellor to have the funds paid in to court pending the hearing and decision of the lawsuit. But we can not read into that opinion an order by that Court to eliminate the defendant as trustee. The defendant had not at that time testified. We hold that the Supreme Court did not intend to eliminate the defendant from serving as trustee without first hearing from that defendant who stood ready and able to explain not only the terms and extent of the trust but also to account for his every act in the face of multiple lawsuits. We hold that Gayle Franklin Cook is not handicapped by any conflict, hostility or incompatibility which would hinder or prevent his carrying out the terms of the trust.

## VIII.

The nature and extent of the trust is as follows:

The settlor, James Milton Cook, made his brother, Gayle Franklin Cook, the beneficiary of a policy of life insurance on the settlor's life, the proceeds from the policy were to be held in trust for the following purposes: (1) pay all debts of the settlor; (2) put the settlor's step-son, William Baker, in a farming operation; (3) the remainder of the funds to be used for the benefit of the settlor's only son, James Perry Cook. The trustee was to exercise his judgment and his discretion in carrying out the terms of the trust. The trustee can use income and corpus for the purposes stated. The trust will terminate upon James Perry Cook reaching the age of 18 years, at which time the entire corpus will be paid to him. Should Gayle Franklin Cook die or become unable to administer the trust, the settlor's brother, John Cook will act as trustee under the same terms and conditions.

## IX.

Considering the history of this trust, the continuous litigation, the obvious distrust exhibited by the mother of the minor bene-

ficiary, we feel that Gayle Franklin Cook should make a $50,000.00 bond as trustee. We do not require this bond in lieu of removing him as trustee. We hope that the requirement of bond will tend to end arguments and litigation at the expense of the trust. The bond is to be approved by the chancellor.

Upon satisfactory bond being made, the chancellor will enter an order in this cause directing the clerk and master to surrender to Gayle Franklin Cook all funds the clerk and master holds as special guardian of James Perry Cook. This cause will remain on the docket of the Chancery Court at Union City, Tennessee, and Gayle Franklin Cook will annually file in that court an accounting of his management of this trust.

The decree of the chancellor is reversed. A decree will be entered in this court setting out the nature and extent of this trust as stated in Section VIII of this opinion; ordering Gayle Franklin Cook to pay into the trust $433.75 and $607.74; approving the accounting filed by Gayle Franklin Cook as stated in this opinion; ordering bond as required in this opinion; adjudging all costs in the trial court and in this court since the order of remand one-half against the trust fund and one-half against the plaintiff Virginia Cook; and remanding this cause to the Chancery Court sitting at Union City, Tennessee for such further proceedings as may be necessary.

NEARN, J., and QUICK, Special Judge, concur.