**Rodney A. BURLESON, Executor of the Estate of Dock H. Burleson, Plaintiff–Appellee,**

v.

**Edlois McCRARY, Defendant–Appellant.**

Supreme Court of Tennessee, at Knoxville.

June 20, 1988.

Thomas McKinney, Jr., Kingsport, for defendant-appellant.

Mark H. Toohey, Kingsport, for plaintiff-appellee.

## OPINION

HARBISON, Chief Justice.

In this case the trial court and Court of Appeals held that an apparent warranty deed in fee simple executed by the grantor

to one of his daughters should be deemed in equity to be a conveyance in trust for the benefit of all of the five children of the grantor. The courts imposed a resulting trust upon the grantee and directed her to reconvey the property to the executor of the estate of the grantor. We affirm.

There was controverted testimony as to material issues in the case, but as the matter comes to this Court there are concurrent findings of fact. These findings are supported by material evidence and are, therefore, conclusive here. *See* T.C.A. § 27–1–113.

The grantor Dock H. Burleson was the father of five children one of whom is the executor of his will and is the appellee here. The defendant-appellant Edlois McCrary was another of the children of Mr. Burleson and is the sister of the executor.

At the time of the transactions in question in this case, the grantor was a widower. All of his children were mature adults. None of them resided in his home; but, apparently, there were good family relations among all of the children and their father.

On August 20, 1982, the grantor executed a will leaving his estate in equal shares to his children after payment of debts and funeral expenses. Appellee was named executor of the will and was given a power to sell all of the real estate which the testator owned at the time of death, either at private or public sale, with the proceeds to be divided equally among the beneficiaries of the estate.

Mr. Burleson, the grantor and testator, had been hospitalized in 1982 for kidney disease. In July, 1983, however, he was again hospitalized; and he remained so until his death on October 5, 1983, a period of a little less than three months. During his hospitalization he was able to leave the institution on one occasion, early in September, for a family reunion. Issues were made as to his mental capacity at the time of the execution of two deeds involved in this litigation, in late August, 1983. Both the trial court and the Court of Appeals have concurred in finding that the testator did not lack mental capacity, and there is very substantial evidence in the record to support that conclusion.

In addition to a fairly modest personal estate, Mr. Burleson owned a house and lot in Kingsport, Tennessee, the stipulated value of which was $35,000.00. He also owned some lots in a subdivision in Hawkins County, Tennessee, the stipulated value of which was $11,000.00. He had some life insurance and a policy of hospitalization insurance which later was found sufficient to pay most of the expenses of his final hospitalization.

Nevertheless, like many elderly people, Mr. Burleson was concerned about the high cost of medical and hospital services. On several occasions after his hospitalization in July, 1983, he discussed with his son-in-law, husband of the appellant, his concern over the expenses incident to his hospitalization. He also discussed this concern with several of his other children.

On August 23, 1983, Mr. Burleson executed a warranty deed to his residence in Kingsport to the appellant, Mrs. Edlois Burleson McCrary. The deed was recorded a few days after its execution and purports to be a warranty deed in fee simple, reciting a consideration of $10.00 cash and other good and value considerations. On its face it contains no conditions or limitations.

Under date of August 30, 1983, Mr. Burleson executed a second deed to another of his daughters, Mrs. Nell Burleson Carter, conveying to her his real estate in Hawkins County, Tennessee. This deed recites a consideration of $1.00 cash and other good and valuable considerations. Both deeds were prepared by the same attorney, and the second deed was also duly recorded shortly after its execution. It does appear, however, that the two deeds were executed on different dates.

It was the contention of appellant that the deed from her father was an outright conveyance, not in trust, and that her father intended for her to have his residence as her sole and separate property. Her contention was supported by the testimony of her husband, but the overwhelming weight of the testimony was to the con-

trary, as concluded by both the trial court and the Court of Appeals.

Mrs. Carter, grantee of the second deed, testified that at the time her father discussed that deed with her, Mrs. McCrary was present. Mrs. Carter said that her father told her that she was to hold the Hawkins County property for the benefit of herself and her brothers and sisters equally. She was given the option either of paying her father's estate for the property or of reconveying the property for the benefit of herself and her brothers and sisters. She testified that when her father told her that he was deeding her the Hawkins County property, he said that he was telling her the same thing which he had told Mrs. McCrary, the appellant, when he had given her a deed to his residence in Kingsport a few days earlier. Mrs. McCrary was present and acknowledged what her father had said, according to the testimony of Mrs. Carter.

It was the testimony of Mr. McCrary and other witnesses that the deeds were executed by Mr. Burleson so that his real estate might be placed out of the reach of creditors in view of his mounting hospital and medical expenses.

Mrs. Carter acknowledged that at all times she held the Hawkins County property in trust for her brothers and sisters. She resided in Texas and was only in Tennessee occasionally for family visits. She testified, however, that she stood ready at all times after her father's death to deed the Hawkins County property back to the estate for distribution among the beneficiaries. She actually executed a deed to that effect shortly before the commencement of the trial of the present case in September, 1985.

█ The weight of the evidence clearly supports the conclusions of the courts below that the grantor did not intend for Mrs. McCrary to receive his residence as her separate property, but that he intended that she either pay his estate the value of the property or reconvey it so that it could be sold and the proceeds equally divided among all of the children. There is testimony that for several months following her father's death Mrs. McCrary admitted that the property was not hers outright and that she attempted to borrow funds from other family members to pay the value of the property to the estate for division. Not until the spring of 1984, following her father's death in October, 1983, did she ever assert outright ownership, according to the weight of the testimony.

█ While it is clear that the grantor expressed the intention that both tracts of real estate be held by the grantees of the two deeds in trust, the evidence is not sufficiently clear that his declarations of trust with respect to his residence occurred prior to or simultaneously with the execution of the deed, so as to establish an express trust. *See Sanderson v. Milligan*, 585 S.W.2d 573 (Tenn.1979) and cases cited therein. Apparently, no other family members were present when the first deed was delivered to appellant; and the later declaration of the grantor at the time of executing the second deed is hardly sufficiently clear and definite to meet the requirements of an oral declaration of trust under the law of this state, especially since those declarations were, at least in part, denied by the husband of appellant. Mr. McCrary made most of the arrangements for the preparation of the deeds and had participated in conversations with the grantor about the necessity for them in order to avoid the claims of creditors.

Both the trial court and the Court of Appeals held that in the absence of an express trust, a resulting trust could and should be imposed upon the grantee of the first deed, with the result that she would be required to reconvey the residence to the executor for sale and distribution of the proceeds under the will.

█ Resulting trusts and constructive trusts are both created by courts of equity in order to satisfy the demands of justice. One instance when resulting trusts are utilized occurs in a situation where there has been a declaration of an intent to create a trust and the trust, for some reason, has failed. Resulting trusts generally are imposed in accordance with the actual or as-

sumed intention of the parties. *See generally* Gibson's Suits in Chancery § 382 (W. H. Inman 6th ed. 1982). Constructive trusts are generally created or imposed without reference to any presumed intention of the parties. *Id.* at § 383.

■ Appellant insists that since the action is brought for the benefit of the heirs and devisees of the grantor, they stand in no different position from that which he occupied. It is her insistence that Mr. Burleson would not have been permitted to impose a trust in the present situation had he survived and brought the action.

Appellant principally relies upon the case of *Greene v. Greene*, 38 Tenn.App. 238, 272 S.W.2d 483 (1954). There, despite a jury verdict to the contrary, the Court of Appeals held that the evidence upon which the claimed resulting trust was based was indefinite and of doubtful sufficiency to justify the factual conclusions of the jury. Further, in that case the theory of resulting trust was that the claimant had furnished part of the consideration for the purchase of the real estate involved, title to which had been taken in the name of her brother. The court held that in view of the fact that she had given a warranty deed to her brother of her undivided interest in the property for a stated consideration, she was precluded from attempting to show that there was no consideration.

The theory of the resulting trust in the present case is not the classic situation presented in *Greene, supra,* where one person pays a consideration and title is taken in another. In the present case, the theory was one of a failed or frustrated trust. The proof very nearly, but technically not quite, established an express trust; and the great preponderance of the evidence showed that there was an intention on the part of both the grantor and the grantee that the subject property be held by the grantee for the use and benefit of her brothers and sisters. This was not the situation in the *Greene* case, which was brought on an entirely different theory and is not dispositive here.

As pointed out previously, resulting trusts can arise or be imposed in various situations. Frequently they are imposed when the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust, but the trust fails for some technical or evidentiary reason. *See* Restatement (Second) of Trusts § 411 (1959); G. Bogert *Trusts and Trustees* § 468 (2d ed. 1977).

The latter situation is presented here; and there is no issue on appeal as to the sufficiency, admissibility or clarity of the evidence respecting the intention of the parties. It is pointed out by appellant that the grantor may have had an illegal purpose in mind, to frustrate legitimate creditors; but among his children no policy of the law precludes the granting of a resulting trust, particularly where the grantee was a party to the alleged improper purpose and had knowledge thereof. *See* Restatement (Second) of Trusts § 422 (1959).

There is strong evidence in the record that it was appellant, herself, and her husband who suggested to Mr. Burleson that the transfers should be made out of an abundance of caution; and it was they who primarily engendered his concern that his assets might be consumed by the expenses incident to his illness and hospitalization. Under these circumstances, there is no reason that the doctrine of implied or resulting trust should not be enforced against the appellant.

Indeed, it is the insistence of the appellee that any such illegal purpose should not be carried out. He is the executor of the estate, and the personal assets in the estate are insufficient to pay the residue of the outstanding medical bills and other final expenses of the decedent. The executor proposes to sell the lands in question and to satisfy the debts of the decedent therefrom before making distribution equally among the children in accordance with the terms of the will.

■ That an executor has an interest in real estate sufficient to seek a sale thereof when the personal assets are insufficient is clearly established by statute in this state. *See* T.C.A. §§ 30-2-402 *et seq.* In addition,

the executor in the present case was expressly clothed with a power of sale of realty in order to make distribution in equal shares among the children. The insistence of appellant that the executor lacked standing to maintain the present action to clear title to the decedent's land is, therefore, without merit.

The judgments of the courts below are affirmed at the cost of appellant. The cause will be remanded to the Chancery Court for such further proceedings as may be necessary.

FONES, COOPER, DROWOTA and O'BRIEN, JJ., concur.