## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

BRANDY REBECCA THATCHER, )
a minor by next friend, KATHY VAN )
STORY, )
             )
      Plaintiffs/Appellants, ) **Haywood Chancery No. 10975**
             )
VS. ) **Appeal No. 02A01-9605-CH-00114**
             )
BOBBY PHILLIP WYATT, ROBERT )
PHILLIP WYATT and WILLIAM LEA, )
             )
      Defendants/Appellees. )

**FILED**

**May 15, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF HAYWOOD COUNTY
AT BROWNSVILLE, TENNESSEE
THE HONORABLE GEORGE R. ELLIS, CHANCELLOR

**LEWIS L. COBB**
**JUSTIN S. GILBERT**
**SPRAGINS, BARNETT, COBB & BUTLER**
Jackson, Tennessee
Attorneys for Appellants

**PAT H. MANN, JR.**
Brownsville, Tennessee
Attorney for Appellees

**REVERSED**

                                       **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**
      In this breach of contract case, Kathy Van Story ("Plaintiff"), as the next friend of

Brandy Thatcher ("Brandy"), seeks a judgment declaring that the proceeds of Janie Perry Thatcher Wyatt's ("Decedent") $100,000.00 life insurance policy be held in trust for the benefit of Brandy. The trial court ordered that the proceeds of Decedent's life insurance policy be held in trust until Brandy reaches age twenty-five or until Brandy has completed her desired college, graduate and medical school education, whichever is later, and further ordered that any remaining monies be distributed between Brandy and Bobby Wyatt ("Defendant"). Plaintiff appeals the judgment of the trial court arguing that the trial judge erred in granting Defendant a one-half interest in the trust following the latter of Brandy's twenty-fifth birthday or desired college, graduate and medical school education asserting that it was the Decedent's intent that the entire trust be used for the benefit of Brandy. For the reasons stated hereafter, we reverse the judgment of the court below.

**FACTS**

In 1986, Decedent married Defendant. Decedent had one child from a previous marriage, Brandy. Defendant had two children from a previous marriage, Robert Phillip Wyatt ("Phillip") and Terry Ralph Wyatt ("Terry"). No children were born of the marriage between Decedent and Defendant.

In 1988, Decedent developed uterine cancer. After undergoing treatment for her cancer, Decedent's cancer remained in remission for almost five years. In October 1992, Decedent began experiencing problems with her lungs. Upon visiting her physician, Decedent was initially diagnosed as having pneumonia. However, in January 1993, Decedent was correctly diagnosed as having lung cancer. On March 18, 1994, Decedent died.

Before her death, Decedent executed a $100,000.00 life insurance policy, naming Defendant as the beneficiary. According to the testimony of the Plaintiff, Decedent's sister, in December 1993 Decedent instructed both the Plaintiff and Defendant to hold the proceeds of Decedent's $100,000.00 life insurance policy in trust for the education, care

2

and future of Brandy. Plaintiff and Defendant were to act as co-trustees and were not to extract money from the trust without the signatures of both parties. Plaintiff and Defendant agreed to create a trust from the proceeds of Decedent's life insurance policy and to act as co-trustees of the trust for Brandy.

Defendant, however, denied that the Decedent requested that he and Plaintiff form a trust for the care and education of Brandy out of the proceeds of Decedent's $100,000.00 life insurance policy. Instead, Defendant testified that Decedent only asked him to take care of Brandy after she died, and he agreed that he would take care of Brandy to the best of his ability.

Substantiating Plaintiff's testimony that a trust was to be created for Brandy from the proceeds of Decedent's $100,000.00 life insurance policy, Phyllis Presley, Decedent's sister, testified that Decedent said on several occasions that the proceeds from her $100,000.00 life insurance policy were to be held in trust for Brandy and that Plaintiff and Defendant were to act as co-trustees of this money. Presley further stated that the money was to be used by no one other than Brandy.

Moreover, the Decedent's aunt, Floye Cobb ("Cobb"), testified that Decedent executed a $100,000.00 life insurance policy for the benefit of Brandy while Decedent was married to her previous husband, Ron Thatcher. After Ron and Decedent divorced but before Decedent married Defendant, Decedent executed another $100,000.00 life insurance policy making Cobb the beneficiary and instructing Cobb to use the proceeds to take care of Brandy. Following her marriage to Defendant, Decedent changed the beneficiary on her life insurance policy from Cobb to Defendant and instructed Defendant that he and the Plaintiff were to act as co-trustees of the proceeds of the policy which were to be used for the care and education of Brandy. Furthermore, Cobb testified that Decedent repeatedly stated that the proceeds from her $100,000.00 insurance policy were to be used solely for the benefit of Brandy.

3

Decedent's sister, Sherry Van Story ("Sherry"), testified that Decedent told her on several occasions that Plaintiff and Defendant had agreed to act as joint trustees of the proceeds from Decedent's $100,000.00 life insurance policy. Sherry stated that the life insurance proceeds were to be used to pay Decedent's medical bills, the mortgage on Defendant's house if Brandy continued to live with Defendant after Decedent's death, Brandy's college education and Brandy's future living expenses.

Kim Evans, the Decedent's first cousin, testified that Decedent told her that the proceeds from Decedent's $100,000.00 life insurance policy were to be used for Brandy's college education and that Plaintiff and Defendant were to act as co-trustees.

Brandy testified that her mother, the Decedent, had repeatedly stated to her that she had the cost of Brandy's medical school "covered."

Charlotte Wright, a co-worker and friend of the Decedent, testified that the proceeds from Decedent's $100,000.00 life insurance policy were to be used for Brandy's college education.

Phillip Wyatt, his wife Stephanie Wyatt and Terry Wyatt all testified that they had never heard the Decedent refer to a trust which was to be created for the benefit of Brandy.

Nonetheless, in May 1994 after Decedent's death, Defendant collected the $100,000.00 in life insurance proceeds, purchased a $50,000.00 certificate of deposit and placed the other $50,000.00 into an investment account. Without conferring with the Plaintiff, Defendant placed the certificate of deposit and the investment account under the name of the "Brandy Thatcher Trust." However, instead of acting as the co-trustee along with the Plaintiff, Defendant employed William Lea to act as trustee and made the trust a revocable trust. Defendant structured the trust so that it would terminate when Brandy reached age twenty-five. The trust was then to be distributed equally between Brandy and Defendant's two sons, Phillip Wyatt and Terry Wyatt.

4

In the summer of 1994, Brandy moved out of Defendant's house and began living with the Plaintiff. In July 1994, two days after Brandy's move from Defendant's house to Plaintiff's house, Defendant instructed William Lea to terminate the trust that he had created for Brandy and to place the proceeds in an account under the name of his son, Phillip Wyatt.

**LAW**

The sole issue before this Court is whether the trial court erred in granting the Defendant, Defendant Wyatt, a one-half interest in the remaining proceeds of Decedent's $100,000.00 life insurance policy following the latter of Brandy's twenty-fifth birthday or the date at which Brandy completes her desired graduate school education.

As a tool of equity, a resulting trust will be imposed when necessary to prevent a failure of justice. Burleson v. McCrary, 753 S.W.2d 349, 352 (Tenn. 1988); Estate of Wardell ex rel. Wardell v. Dailey, 674 S.W.2d 293, 295 (Tenn. Ct. App. 1983), quoting 76 Am.Jur.2d *Trusts* § 196 (1975). Such trusts are "judge-created trusts or doctrines which enable a court, without violating all rules of logic, to reach an interest in property belonging to one person yet titled in and held by another." Wells v. Wells, 556 S.W.2d 769, 771 (Tenn. Ct. App. 1977). A resulting trust is defined as follows:

> [b]roadly speaking, a resulting trust arises from the nature of circumstances of consideration involved in a transaction whereby one person thereby becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and although there is an absence of fraud or constructive fraud.

In Re Estate of Roark v. Bischoff, 829 S.W.2d 688, 692 (Tenn. Ct. App. 1991), quoting 76 Am.Jur.2d, *Trusts*, § 196, p. 429 (1975).

The equitable power to establish a resulting trust applies with respect to both real and personal property. In Re Estate of Roark, 829 S.W.2d at 693, citing 89 C.J.S. *Trust*

5

§ 98 p. 941 (1955). See also, Dailey, 674 S.W.2d at 295; 23 A.L.R. p. 1500. In either case, "[i]t is . . . uniformly held that resulting trusts may be, and generally are, proved by parol evidence." Chappell v. Dawson, 308 S.W.2d 420, 422 (Tenn. 1957). See also, Butler v. Rutledge, 42 Tenn. (2 Cold.) 4 (1865); Savage, 4 Tenn. App. at 283; See generally, 89 C.J.S. *Trusts* Sec. 101, 133 (1955); Gibson's Suits in Chancery, § 976, n. 2 (5th Ed.1956). In addition, it is also uniformly held that any oral statement purporting to create a resulting trust in property must have been made prior to or contemporaneously with the transaction. In Re Estate of Roark, 829 S.W.2d at 692.

However, when one attempts to create a resulting trust on the basis of parol evidence, proof of an oral trust must be established by clear, cogent and convincing evidence. King v. Warren, 680 S.W.2d 459, 460 (Tenn. 1984); Allen v. National Bank of Newport, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); In Re Estate of Roark, 829 S.W.2d at 693; Al-Haddad v. Al-Haddad, 774 S.W.2d 192 (Tenn. Ct. App. 1989).

In addressing the requirements necessary for the creation of an oral resulting trust, the court in King v. Warren, 680 S.W.2d 459 (Tenn. 1984), stated as follows:

> [w]e recently had occasion to discuss the law with respect to the establishment of an oral trust in real estate, affirming the requisites that the declaration must be made prior to or contemporaneous with a transfer of realty, must be proven by evidence that is clear, cogent and convincing, and that ordinarily, the testimony of a single, interested witness would not be sufficient to establish a trust by that quantum of proof. Tansil v. Tansil, 673 S.W.2d 131 (Tenn.1984); citing e.g., Sanderson v. Milligan, 585 S.W.2d 573 (Tenn.1979) and Hunt v. Hunt, 169 Tenn. 1, 80 S.W.2d 666 (1935).

King, 680 S.W.2d at 461.

Similarly, the court in Linder v. Little, 490 S.W.2d 717 (Tenn. Ct. App. 1972), addressed the creation of an oral trust and stated that:

> the declaration of trust by the grantor must be before or contemporaneous with the conveyance. Adrian v. Brown, 29 Tenn.App. 236, 196 S.W.2d 118 (1946). And, proof of a parol trust must be of the clearest and most convincing character. It must be so clear, cogent and convincing as to overcome the opposing evidence coupled with the presumption that obtains in favor of the written instrument. Hoffner v. Hoffner, 32 Tenn.App. 98, 221 S.W.2d 907 (1949) and authorities cited therein.

6

Linder, 490 S.W.2d at 723.

Resulting trusts generally are imposed in accordance with the actual or assumed intention of the parties. Burleson, 753 S.W.2d at 352-53; See generally, Gibson's Suits in Chancery § 382 (1982). One instance where resulting trusts are imposed occurs in a situation when the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust, but the trust, for some reason, fails. Burleson, 753 S.W.2d at 353; See, Restatement (Second) of Trusts § 411 (1959); G. Bogert Trusts and Trustees § 468 (1977).

In discussing the varying situations in which a resulting trust may be imposed, this Court stated in Estate of Wardell ex rel. Wardell v. Dailey, 674 S.W.2d 293, 295 (Tenn. Ct. App. 1983), as follows:

> [t]he resulting trust may be created in a variety of situations, for example "[w]here a deed by father to son is shown to be for the benefit of the mother." Gibson's Suits in Chancery, § 976, n. 2 (5th Ed.1956). This court, more than fifty years ago, in Savage v. Savage, 4 Tenn.App. 277 (1927), confronted a somewhat similar situation. There, the plaintiff, after purchasing a lot with a house on it, had conveyed the same to his father to be held in trust for the former and other third persons, while the former went "north, [to] work where he could get better wages" in order to pay off the notes on the land. Id. at 279. While the plaintiff/son was absent, the father remarried and later died, after which the widow claimed the land. In establishing a resulting trust in favor of the son, the court stated that "[w]hen property is conveyed or given by one person to another, to hold for the use of a third person, such a trust will thereby be created as will give equity jurisdiction to compel the application to the purposes of the trust." Id. at 284.

In Estate of Wardell ex rel. Wardell v. Dailey, 674 S.W.2d 293, 295 (Tenn. Ct. App. 1983), a wife requested that her name be removed from her joint checking and savings account which she had established with her husband due to her blindness and inability to oversee her financial affairs. Id. at 296. Upon removal of the wife's name from her joint checking and savings accounts, her son's name was added instead. Husband thereafter had the name of his son placed jointly with him on virtually all of his certificates of deposit and money market certificates, which resulted in the son being the joint owner of most of his parent's estate at the time of his father's death. Id. After the father's death, son

7

claimed to be the sole owner of the joint checking and savings accounts, certificates of deposit and money market certificates. Id. The court, however, imposed a resulting trust on the joint and survivorship bank accounts and certificates of deposit and required the son to hold the money in trust for the lifetime of his mother and thereafter required the son to divide the corpus of the trust with his sister at his mother's death. Id. at 297.

In Burleson v. McCrary, 753 S.W.2d 349 (Tenn. 1988), Mr. Burleson gratuitously transferred his residence to one of his daughters and manifested an intention that the daughter hold the property in trust for the benefit of all five children of Mr. Burleson. Although the daughter claimed that she owned the property in fee simple absolute because the property had been properly deeded and recorded in her name, the court held that the daughter held the property in trust for the benefit of all five children of Mr. Burleson. Id. at 353. The court, therefore, imposed a resulting trust upon the grantee daughter and directed her to reconvey the property to the executor of Mr. Burleson's estate. Id.

Moreover, in the case of Cook v. Cook, 559 S.W.2d 329, 332 (Tenn. Ct. App. 1977), this Court was faced with a situation similar to the case at bar. In Cook, the decedent designated his brother as the beneficiary of his life insurance policy but orally instructed his brother to pay decedent's debts, to set decedent's step-son up in a farming operation and to use the remaining proceeds for the benefit of decedent's son. Id. In accordance with the decedent's intentions, this Court held that the decedent's brother was the trustee of the proceeds from decedent's life insurance policy and that the proceeds of the trust were to be used to pay decedent's debts, to set the decedent's step-son up in a farming operation and to use the remaining proceeds for the benefit of decedent's son. Id. at 333. In holding that an oral trust had been created, this Court stated that it is important to take note of the relationship between the parties to the trust agreement and to weigh the reasonableness of the terms of the trust as orally related. Cook v. Cook, 559 S.W.2d 329, 332 (Tenn. Ct. App. 1977).

The record establishes that Decedent and Brandy enjoyed a close relationship. As

8

the only natural child of the Decedent, it is reasonable to believe that Decedent wanted to ensure that Brandy was properly provided for after Decedent's death. Thus, upon our review of the record, the clear, cogent and convincing evidence reveals that the Decedent named Defendant as the legal beneficiary of her $100,000.00 life insurance policy, but Decedent impressed an oral trust upon the proceeds of her insurance policy by instructing the Plaintiff and Defendant to create a trust for the benefit of Brandy from these proceeds and to act as co-trustees of the trust. We, therefore, hold that the proceeds of Decedent's $100,000.00 life insurance policy be held in trust for the benefit of Brandy. We further hold that the Plaintiff, Kathy Van Story, is hereby appointed as trustee of the trust.

The judgment of the trial court is hereby reversed. Costs on appeal are taxed to the appellees for which execution may issue if necessary.

 

 

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.

9