# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 9, 2011 Session

## DENZIL RUSS PARTIN v. MARY AVA PARTIN, ET AL.

**Appeal from the Chancery Court for Campbell County**
**No. 08-092      Billy Joe White, Chancellor**

---

**No. E2010-01662-COA-R3-CV - Filed - April 20, 2011**

---

This lawsuit arose out of two transfers of real property.  Denzil Russ Partin ("Husband") sued Mary Ava Partin ("Wife") and Hazel Walden ("Mrs. Walden"), seeking declaratory relief that the two properties Wife transferred to Mrs. Walden, Wife's mother, were held in trust for Husband, Wife, and their son, Courtney Partin.  The Trial Court found that title to the real property at issue was vested in Mrs. Walden, that no resulting trust had been created, and, that, in any event, the statute of limitations had run on Husband's action.  Husband appeals. We hold that although the Trial Court erred in stating that the statute of limitations had run on Husband's claim, the Trial Court did not err in declining to impose a resulting trust on the real property at issue.  We affirm the judgment as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.

J. Stephen Hurst, LaFollette, Tennessee, for the appellant, Denzil Russ Partin.

Mark R. Orr, LaFollette, Tennessee, for the appellees, Mary Ava Partin and Hazel Walden.

# OPINION

## Background

Husband and Wife were married in the 1970s. Husband and Wife purchased a piece of real property ("Lilac") located on what is now Lilac Road in Campbell County, Tennessee. In 1990, Husband and Wife divorced. Pursuant to that divorce proceeding, Wife was awarded ownership of Lilac as her separate property. Although Husband and Wife later reconciled and remarried, Wife remained the sole owner of record of Lilac until she later transferred title to Mrs. Walden.

In the 1990s, after Husband and Wife reconciled, Mrs. Walden and her husband James Walden ("Mr. Walden") deeded a piece of real property at 7286 Stinking Creek Road, Pioneer, Tennessee ("Stinking Creek") to Wife. Wife then deeded an interest in Stinking Creek by quitclaim deed to Husband and their adult son, Courtney Partin, so that the three of them were the owners of record. The house on Lilac subsequently burned down, leaving it bare real estate.

Husband was involved in an armed standoff with law enforcement officers that led to a number of criminal charges against Husband. Husband sustained injuries during the incident and was hospitalized. Courtney Partin also was charged with a related criminal offense. Husband, represented by attorney Tim Irwin, was convicted of multiple felonies as part of a plea agreement.

While incarcerated, Husband executed a Power of Attorney to Wife. The parties dispute the purposes that Husband contemplated in creating the Power of Attorney. Wife, utilizing her Power of Attorney, transferred Stinking Creek to Mrs. Walden and Mr. Walden[1] on May 23, 2002. Mrs. Walden and Mr. Walden borrowed twenty-six thousand six hundred sixty dollars and twenty-seven cents ($26,660.27) to fund the purchase of Stinking Creek, and this money was used to hire attorney Doug Trant to represent Courtney Partin. On September 22, 2004, Wife transferred Lilac to Mrs. Walden. Wife included Husband's name on the quitclaim deed for Lilac to Mrs. Walden.

On July 1, 2008, after Husband was released from prison, Wife filed for divorce. Husband counterclaimed, averring that Wife had improperly transferred Stinking Creek and Lilac to Mrs. Walden. On August 1, 2008, Husband filed this suit against Wife and Mrs. Walden in the Chancery Court for Campbell County, asking the Court to declare that Stinking Creek and Lilac were held by Mrs. Walden in trust for Husband, Wife, and

---

[1]Mr. Walden subsequently died and his interest in Stinking Creek passed to Mrs. Walden.

Courtney Partin. Wife and Mrs. Walden, in their Answer, asserted that Husband instructed Wife to raise money to hire an attorney for their son, Courtney Partin. Wife and Mrs. Walden contended that, lacking sufficient credit to take out a loan herself, Wife sold Stinking Creek to Mrs. Walden and Mr. Walden who in turn borrowed money which, in keeping with Husband's instructions to Wife, was used to hire counsel for Courtney Partin. Husband maintained that Wife transferred both Stinking Creek and Lilac in order to keep the properties out of the marital estate.

On March 16, 2010, the parties appeared in Chancery Court and disputed the status of the properties at issue. Husband, Wife, and Mrs. Walden testified. Exhibits that pertained to the disputed issue of Mrs. Walden's ownership of Stinking Creek were entered, including: tax receipts on Stinking Creek in Mrs. Walden's name; receipts for insurance paid on Stinking Creek in Mrs. Walden's name; and copies of checks written by Mrs. Walden for the mortgage on Stinking Creek. In turn, Husband entered documents revealing that, on April 10, 2008, Wife made a two thousand dollar ($2,000) payment on the Stinking Creek loan. Wife acknowledged making that one payment, but testified that all other payments were made by Mrs. Walden. Wife testified that she transferred Stinking Creek to Mrs. Walden and Mr. Walden without any expectation of getting Stinking Creek back.

The parties contested what Husband wanted Wife to do with the Power of Attorney. Husband contended that he asked Wife to raise money to hire an attorney for him and, if any money remained, to hire an attorney for Courtney Partin. Husband stated:

> I said to get me a lawyer first and if there is any left to get a lawyer for my son, and my brother would have to pay Tim Irwin. When she got the money borrowed she would have to pay my brother back. And that letter was wrote in March of 2002.

Wife disputed this version of events and claimed that Husband instructed her to raise money in order to hire an attorney for Courtney Partin, their son.[2] Wife produced letters Husband wrote to Courtney Partin while he was incarcerated. In a letter dated October 2, 2002, Husband wrote: "I will always help you my son. We may have to sell our place to do that. But I will do whatever it takes." In a letter dated October 9, 2002, Husband wrote:

> You ask the judge to appoint you an appeals attorney.(If you do not like him we will try to get another lawyer for you by Jan. 2003. We will just have to get a lawyer we can afford. But we will get you a lawyer if you

---

[2]Courtney Partin was represented originally by attorney Charles Herman, but Mrs. Walden later paid Doug Trant to represent Courtney Partin with money raised from Stinking Creek.

do not like the court appointed one … I know it is a lot to pay for a lawyer but you needed a good lawyer. Now you can fire Hermon. We do not need that backstabber.

Husband in turn introduced a letter he wrote to Wife dated March 20, 2002, wherein he asked for a lawyer but did not mention raising money from the properties at issue.

Regarding Lilac, Wife and Mrs. Walden introduced a copy of the final judgment of Husband and Wife's divorce from 1990 wherein Wife was awarded sole ownership of Lilac. Husband nevertheless testified that he had an interest in Lilac based on a verbal representation made by Wife.

Wife testified that she was paid eight thousand dollars ($8,000) for Lilac by Mrs. Walden and that she used the money to hire Herb Moncier to represent Husband and Wife in a civil suit. Husband denied that Moncier represented him. However, Wife introduced a letter from prison dated August 16, 2004, in which Husband wrote to Courtney Partin:

MANSOUR [sic] my lawyer came down on August 12, 2004 to get me to sign some papers against Campbell County. I ask him about the house lawsuit and he said he would tell Ava on Monday. He is letting on that he has not took [sic] the case. It been 8 months sense we give him the papers on the house fire.

On June 21, 2010, the Trial Court entered an order with a Memorandum Opinion incorporated, finding and holding, *inter alia*:

Now, first of all, the statute of limitations would have run on any claim that Mr. Partin has. Secondly, this case should have been tried in conjunction with the divorce. It's a part of the marital property, the marital estate, allegedly. You can't bifurcate over into this court and try an issue that should have been tried over there, except we did. And since we did the Court's heard the facts of the case.

Mr. Partin insisted that Ms. Partin, by power of attorney and the son's signature, convey the Stinking Creek property to make a loan or anything to get money on it, to sell it, whatever. With a power of attorney she had the right to do any of those things.

She conveyed it to her mother for twenty-five thousand dollars

-4-

that was used for Mr. Partin's attorney's fees.

The Lilac property, Mr. Partin had absolutely no legal interest in that property. Any equitable interest that he might have had is used up by an eight thousand dollar loan that's not been repaid. It would be terribly inequitable for Ms. Walden to lose any interest in this property. She has thirty-two thousand dollars, or thirty-three, minus maybe a two thousand dollar payment that her daughter made on one occasion, in this property, and I've seen or heard no offer by Mr. Partin or no proof that he has repaid one penny of this money or is in any position to pay it.

I think the equitable thing in this case is that this property belongs to Ms. Walden, it was conveyed to her to guarantee these loans and she made the loans, they got the money, they used the money, it's not been paid back, and it's been eight years now. It's too late. These parties have no interest in this property....

Husband filed a Petition to Rehear, which was denied by the Trial Court. Husband appeals.

## Discussion

Although not stated exactly as such, Husband raises two issues on appeal: 1) Whether the Trial Court committed reversible error in stating that the statute of limitations had run on Husband's action; and, 2) Whether the Trial Court erred in holding that the real property at issue is owned by Mrs. Walden and no resulting trust was created when the property was transferred to her.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court committed reversible error by stating that the statute of limitations had run on Husband's action. Pursuant to Tenn. R. Civ. P. 8.03, a defendant asserting a defense based on the statute of limitations has the burden of alleging the facts upon which the defense rests in short and plain terms. Tenn. R. Civ. P. 8.03. As Wife and Mrs. Walden neither argued nor affirmatively pled a statute of limitations defense

at the Trial Court level, the statute of limitations defense is waived. Therefore, the Trial Court erred in raising the statute of limitations in its Memorandum Opinion.

Rule 36(b) of the Tennessee Rules of Appellate Procedure provides:

> A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process. When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.

Tenn. R. App. P. 36(b). Here, the Trial Court only briefly mentioned the statute of limitations in one sentence at the beginning of its opinion. The Trial Court then proceeded to rule on the merits of the case. The parties agree on appeal that the Trial Court erred in stating that the statute of limitations had run on Husband's claim. Insofar as the Trial Court rendered its judgment based on the statute of limitations, we vacate that portion of the judgment.

We now turn to the second issue on appeal, whether the Trial Court erred in holding that the real property at issue is owned by Mrs. Walden and that no resulting trust was created when the property was transferred to her. As our Supreme Court has instructed:

> The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment. Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.
>
> While resulting trusts generally arise (1) on a failure of

an express trust or the purpose of such a trust, or (2) on a conveyance to one person on a consideration from another—sometimes referred to as a "purchase-money resulting trust"—they may also be imposed in other circumstances, such that a court of equity, shaping its judgment in the most efficient form, will decree a resulting trust—on an inquiry into the consideration of a transaction—in order to prevent a failure of justice. However, the particular circumstances under which a resulting trust may arise varies from jurisdiction to jurisdiction.

*In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993)(quoting 76 Am.Jur.2d *Trusts* § 166, pp. 197-98 (1992)).

As this Court has further explained:

The equitable device of a resulting trust is used by courts to prevent unjust enrichment. *In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993). The device allows a court to "reach an interest in property belonging to one person yet titled in and held by another." *Smalling v. Terrell*, 943 S.W.2d 397, 400 (Tenn.Ct.App. 1996)(quoting *Wells v. Wells*, 556 S.W.2d 769, 771 (Tenn.Ct.App. 1977)). The principle underlying a resulting trust is that "a trust follows or goes with the real consideration, or results to him from whom the consideration actually comes; that the owner of the money that pays for the property should be the owner of the property." *Smalling*, 943 S.W.2d at 400 (quoting *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn.Ct.App. 1980)). A resulting trust is generally imposed "in accordance with the actual or assumed intention of the parties." *Burleson v. McCrary*, 753 S.W.2d 349, 352-53 (Tenn. 1988).

A resulting trust and its terms must be proven by more than a preponderance of the evidence: "clear, cogent, and convincing" evidence. *St. Clair v. Evans*, 857 S.W.2d 49, 51 (Tenn.Ct.App. 1993). While a resulting trust is generally proven by parol evidence, "[o]rdinarily, the testimony of a single, interested witness would not be sufficient to establish a trust by clear, cogent and convincing evidence." Id.; *see also Story*, 166 S.W.3d at 184.

*Brewer v. Brewer*, No. M2010-00768-COA-R3-CV, 2011 WL 532267, at *6 (Tenn.Ct.App.

February 14, 2011), *no appl. perm. appeal filed.*[3]

It is uncontested by the parties that Wife was awarded Lilac in the 1990 divorce. Neither Husband nor Wife ever recorded any transfer by Wife of any interest in Lilac to Husband. Wife testified at trial that she transferred Lilac to Mrs. Walden in exchange for $8,000, which was used to hire attorney Herb Moncier to represent Husband and Wife in a civil action.

Husband argues that he has an interest in Lilac and that the property should be held by Mrs. Walden in a resulting trust. Husband denies that he was represented by Moncier, and argues that Wife's hiring of Moncier exceeded her authority and that Wife failed to act in Husband's best interests when utilizing the Power of Attorney.

The Trial Court weighed the evidence and accepted Wife's version of events, as was its prerogative. In *Wells v. Tennessee Bd. of Regents*, our Supreme Court discussed witness credibility stating:

> Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989); *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315-16 (Tenn. 1987); *Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978).

*Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). The Trial Court also found that Husband had no legal interest in Lilac and if he had any equitable interest it was "used up by an eight thousand dollar loan that's not been repaid." As found by the Trial

---

[3]After we released our opinion in *Brewer*, we remanded *Brewer* to the trial court for the purpose of considering the parties' proposed settlement agreement. The parties have ten (10) days to notify this Court following entry of the trial court's order on the proposed settlement. According to our order, "[i]f the trial court disapproves the proposed settlement, mandate shall issue in accordance with Tenn. R. App. P. 42. If the trial court approves the proposed settlement, the court will administratively close the appeal." Regardless of the outcome concerning the proposed settlement, we are confident in and rely upon the legal analysis quoted from this opinion.

Court, it would be unjust for Mrs. Walden to lose her interest in Lilac after having paid $8,000 for Lilac and having never recouped the funds. A resulting trust, as an equitable remedy, may not produce such an inequitable outcome.

The evidence does not preponderate against the Trial Court's findings relevant to this issue. Husband failed to prove by clear and convincing evidence that he held any interest in Lilac at the time Lilac was sold to Mrs. Walden and that a resulting trust was created in Lilac. We, therefore, affirm the Trial Court's judgment as to Lilac.

As for Stinking Creek, Husband argues that Mrs. Walden was unjustly enriched by the transfer of Stinking Creek because the price Mrs. Walden paid for the property was substantially lower than the property's actual value. At trial, Husband asserted that Stinking Creek was worth one hundred fifty thousand dollars ($150,000). In 2004, Stinking Creek was valued at forty eight thousand nine hundred ($48,900) for property tax purposes. Tax receipts on Stinking Creek show that from 2005 to 2009 the property was valued at fifty eight thousand nine hundred dollars ($58,900) for property tax purposes.

We note that Stinking Creek was transferred by Wife to Mrs. Walden and her now deceased Husband in 2002 while the property tax valuations were for later years. We also note that property tax valuations certainly are not conclusive as to the value of a parcel of real estate. Additionally, what is clear from the record is that this family at that time was in immediate and serious need of money to obtain legal representation. While these values presented by Husband exceed the amount paid by Mrs. Walden, we cannot say that this evidence alone preponderates against the Trial Court's findings and ultimate decision that Husband did not prove the necessary elements of a resulting trust by clear and convincing evidence.

In support of his contention that the Stinking Creek transaction was not an outright sale, Husband also argues that Mrs. Walden was a mere figurehead and that Wife made payments on the Stinking Creek loan. Husband points to a payment on the Stinking Creek loan made by wife; payment receipts made to Y12 Federal Credit Union signed by Wife; and a payment book in Wife's name. Wife concedes that she made a $2,000 payment on the Stinking Creek loan. Wife maintains that Mrs. Walden made the rest of the payments with Mrs. Walden's money, though Wife physically made the payments when Mrs. Walden was ill.

The Trial Court found that Mrs. Walden made the majority of payments on the Stinking Creek loan, and that Husband and Wife "got the money...and used the money...." The Trial Court weighed the evidence and apparently believed Wife's and Mrs. Walden's accounts. As found by the Trial Court, Mrs. Walden purchased Stinking Creek by obtaining

a loan and that Mrs. Walden made the large majority of the loan payments. The evidence does not preponderate against these findings by the Trial Court. As found by the Trial Court, it would be inequitable for Mrs. Walden to lose her interest in Stinking Creek simply because Wife paid $2,000 on the Stinking Creek loan while Mrs. Walden paid the rest.

Husband argues that Wife exceeded her authority under the Power of Attorney and failed to act in his best interests with respect to Stinking Creek. Specifically, Husband asserts that he instructed Wife to raise money to hire an attorney for Husband first, and then to hire an attorney for Courtney Partin if there was any remaining money. Wife testified that Husband instructed her to raise money to hire an attorney for Courtney Partin. The Trial Court believed Wife. Husband's prison letters, entered into evidence at trial, also support Wife's account. While these letters were written after Wife transferred Stinking Creek to Mrs. Walden, the letters nevertheless form an additional basis for helping to ascertain Husband's goals in executing the Power of Attorney.

Husband testified that legal expenses for Husband and Courtney Partin totaled forty two thousand dollars ($42,000). Husband, as part of his argument that Wife exceeded her Power of Attorney authority, contends that the funds raised from Stinking Creek were far less than total legal expenses for Husband and Courtney Partin, and that the funds were never used to hire an attorney for Husband. Again, the Trial Court accepted Wife's contention that Husband wanted her to raise money to hire first an attorney for Courtney Partin. Additionally, the Trial Court found that the money received from Mrs. Walden for Stinking Creek "was used for Mr. Partin's attorney's fees." The evidence in the record does not preponderate against the Trial Court's finding that Wife carried out Husband's instructions when utilizing the Power of Attorney.

As we have discussed, the Trial Court had sufficient evidence to find that Wife sold Stinking Creek to Mrs. Walden in accordance with Husband's desire to raise money to hire an attorney for Courtney Partin. Husband, while having had an interest in Stinking Creek at the time of its transfer by Wife, has failed to meet the clear, cogent and convincing evidentiary standard required to prove a resulting trust. Wife testified that Husband instructed her to raise money to pay for an attorney for Courtney Partin. Husband disagrees, but his prison letters suggest that he did, in fact, favor doing whatever was necessary, including selling his home, to hire an attorney for his son. "Resulting trusts generally are imposed in accordance with the actual or assumed intention of the parties." *Burleson v. McCrary*, 753 S.W.2d 349, 352-53 (Tenn. 1988).

The Trial Court made credibility determinations, weighed the evidence, and believed Wife's version of events. The evidence does not preponderate against the Trial Court's findings of fact. We, therefore, affirm the judgment of the Trial Court in declining

-10-

to impose a resulting trust with respect to Stinking Creek.

## Conclusion

That portion of the judgment holding that the statute of limitations had run is vacated, and the judgment is affirmed, as so modified.  This cause is remanded to the Trial Court for collection of the costs below.  The costs on appeal are assessed against the Appellant, Denzil Russ Partin, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE