# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 9, 2021 Session

## VIRGIE KATHERINE STAMPS v. VICKIE SHARON STARNES

**Appeal from the Chancery Court for Putnam County**
**No. 2017-165        Ronald Thurman, Chancellor**

_____

### No. M2021-00250-COA-R3-CV
_____

This is a civil action by a widow against her deceased husband's daughter to set aside a 2013 warranty deed pursuant to which the husband conveyed his childhood home to his adult children from a previous marriage. The real property, located in Putnam County, Tennessee, was acquired by the decedent in 1972, fourteen years prior to the marriage to his widow. In this action against the decedent's only surviving issue, his daughter, the widow sought to, *inter alia*, establish a constructive or resulting trust and set aside the deed as a fraudulent conveyance pursuant to Tennessee Code Annotated § 31-1-105. The widow asserted that the conveyance was made fraudulently with an intent to defeat or reduce her claim for a distributive share of his net estate. Upon the motion of the decedent's daughter, the trial court summarily dismissed all of the widow's claims. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Raymond E. Lacy, Michael R. Franz, and Mark E. Tillery, Knoxville, Tennessee, for the appellant, Virgie Katherine Stamps.

Henry D. Fincher, Cookeville, Tennessee, for the appellee, Vickie Sharon Starnes.

## OPINION

James D. Stamps ("Decedent") and his widow, Virgie Katherine Stamps ("Plaintiff"), were married for thirty years, from February 14, 1986, until Decedent's death on November 19, 2016. They were residents of the state of Ohio throughout their marriage and at the time of his death; however, they lived separately during the last ten years of their marriage. Decedent lived with his daughter in Troy, Ohio, during the last six months of his life.

Decedent had two children from a prior marriage. A daughter, Vickie Sharon Stamps Starnes ("Defendant"), and a son, Rickie Erman Stamps.

The real property at issue, 146 acres of farmland and a house located on Phifer Mountain in Putnam County, Tennessee ("the Property"), is where Decedent grew up with his parents. On August 5, 1972, fourteen years prior to his marriage to Plaintiff, Decedent's parents conveyed a remainder interest in the Property to Decedent, subject only to a life estate for his parents. In consideration, Decedent remitted $20,000. Following this conveyance, Decedent's parents continued living on the Property until their deaths. Decedent's mother died in 1981, five years before he married Plaintiff; his father died on June 13, 1986, four months after his marriage to Plaintiff.

Following his parents' death, Decedent and Plaintiff traveled to the Property a few times each year to maintain and enjoy it. As Plaintiff asserted in the Complaint and stated in her affidavit, both Decedent and Plaintiff contributed time, effort, and labor to maintain the Property. All maintenance expenditures and property taxes were paid with marital funds.

In May of 2013, Decedent's son, Rickie, contacted a Cookeville, Tennessee, attorney, Margaret Noland. Rickie instructed her to prepare a warranty deed to convey the Property from Decedent to his children—Rickie Stamps and Defendant—as joint tenants with the right of survivorship. In preparation for the conveyance, Ms. Nolan was advised that Mr. Stamps was a single person and that the consideration for the conveyance was ten dollars. Once the papers were prepared, Rickie Stamps accompanied his father to Ms. Noland's office on May 14, 2013, when and where Decedent executed the warranty deed, which was promptly recorded. It is undisputed that Defendant was not involved in the preparation or execution of the warranty deed at issue.

However, Plaintiff disputes when she became aware of the 2013 warranty deed. While Plaintiff asserts that she did not know of the 2013 deed until four days after Decedent's death, November 23, 2016, Ms. Noland testified in her deposition that Plaintiff called her on October 7, 2016, to complain about the "unmarried" language in the deed. More specifically, as Ms. Nolan testified, Plaintiff complained that the deed falsely identified Decedent as a single person and alleged that the conveyance deprived her of her marital interests in the Property. Shortly thereafter, on November 19, 2016, Decedent died intestate, survived by Plaintiff and Defendant.[1]

Plaintiff initially stated that she filed a petition to administer her deceased husband's intestate estate in Ohio; however, she was unable to provide any details of that proceeding.

---

[1] Rickie Stamps predeceased his father and had no issue. As a result of and immediately upon Rickie Stamps' death, Defendant became the sole owner of the Property.

Although the record contains very little information and no documentation concerning the alleged administration of Decedent's estate in Ohio, Plaintiff states that she inherited unencumbered title to all Decedent's real property in Ohio, the value of which is not in the record.[2] Plaintiff acknowledges that she never filed a petition for a distributive share or elective share in Ohio or Tennessee, and she never filed a petition for ancillary administration of his intestate estate in Tennessee.

Plaintiff filed a complaint initiating this civil action on September 11, 2017, followed by an Amended Complaint on December 12, 2018. In the Amended Complaint, she generally alleged that the Property was "fraudulently transferred in contemplation of divorce and in violation of Plaintiff's marital property rights, as well as her right to an [intestate distributive] share of [her husband's] estate, and that the Decedent further made fraudulent claims within the warranty deed rendering the deed void."[3] Specifically, she sought to set aside the conveyance pursuant to Tennessee Code Annotated § 31-1-105 on the ground the conveyance was made fraudulently with an intent to defeat or reduce her claim as the surviving spouse for a distributive share of his net estate and to establish a constructive and/or resulting trust.[4]

After Defendant filed an Answer, in which she denied all of Plaintiff's claims, and the parties engaged in discovery, Defendant filed a Motion for Summary Judgment to dismiss all claims. Following a hearing, the trial court took the matters under advisement.

In its first order, entered on April 16, 2019, the trial court reserved its ruling on Plaintiff's claims for constructive trust and fraudulent conveyance under Tennessee Code Annotated § 31-1-105 and allowed Plaintiff more time for discovery. In the same order, the court also summarily dismissed the claim for a resulting trust. The trial court explained:

> The Court finds that Plaintiff admits that she did not actually make payment as part of the original transaction of purchase, nor did she incur an absolute obligation to pay as part of the original transaction of purchase. Undisputed facts establish that Plaintiff cannot prove an essential element of her claim for resulting trust. Accordingly, Defendant is granted summary judgment on

---

[2] There is no information concerning when the Ohio estate was opened or closed, and the trial court found that "no estate was ever opened for the Decedent."

[3] In the Amended Complaint, Plaintiff sought "an intestate, distributive, and/or elective share of [her husband's] estate." In subsequent pleadings and Plaintiff's Declaration, Plaintiff clarified that she was not seeking an elective share, only her distributive share.

[4] The Complaint also asserted a claim based on undue influence; however, the trial court dismissed that claim, and Plaintiff does not appeal that decision. Thus, it is not discussed. The trial court also granted summary judgment to Defendant on Plaintiff's claim for "traditional fraudulent conveyance." Plaintiff has not appealed this decision and points out that that her Amended Complaint did not include a claim for a "traditional" fraudulent conveyance.

this point and Plaintiff's claims for resulting trust is DISMISSED with prejudice.

(Citations omitted).

On September 30, 2019, the trial court entered a second order in which it summarily dismissed the claims of constructive trust, explaining that Plaintiff "presented no proof that would permit a finder of fact to conclude that [Defendant] . . . engaged in any fraudulent, wrongful or inappropriate behavior."

In the last order, entered on February 12, 2021, the trial court summarily dismissed the claim for fraudulent conveyance under Tennessee Code Annotated § 31-1-105. The trial court held:

3. The Court finds that it is undisputed that the . . . only remaining claim stated in this action is to set aside a <u>distributive</u> share, and not to fund an elective share. [Plaintiff] has filed no claim for elective share against the Decedent James Stamps ("Decedent") and the time has long passed for doing so. It is also undisputed that the Decedent died without a Will from which Plaintiff could elect, and also that no estate was ever opened for the Decedent.

.     .     .

6. The Court finds that the plain text of . . . § 31-1-105 after the 2002 amendments provided only one avenue of relief for an alleged fraudulent conveyance—such an alleged conveyance is voidable only to the "extent the other assets . . . are insufficient to fund and pay the elective share . . . [." ]The plain language of the statute provides no relief for an alleged fraudulent conveyance of a distributive share.

7. Neither counsel ha[s] cited any cases after the adoption of the 2002 amendments that indicate an action to set aside an alleged fraudulent conveyance of a distributive share is available under Tennessee statutory or common law, nor has the Court found any. In the absence of any authority other than the plain text of the statute, the Court applies the plain text of the law.

This appeal followed.

## ISSUES

Plaintiff challenges the summary dismissal of three claims she asserted in the trial court: (1) her claim to establish a resulting trust; (2) her claim to establish a constructive

trust; and (3) her claim to set aside the warranty deed as a fraudulent conveyance under Tennessee Code Annotated § 31-1-105.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264.

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

### I. RESULTING TRUST

Plaintiff contends the trial court's dismissal of her claim for a resulting trust was based on an incorrect legal conclusion that Plaintiff's claim failed because she did not make payment or incur an absolute obligation to pay as part of the original acquisition of the Property.

The resulting trust doctrine is an equitable device "used by courts to avoid unjust enrichment." *Story v. Lanier*, 166 S.W.3d 167, 184 (Tenn. Ct. App. 2004) (citations omitted). "A resulting trust is one in which the law presumes the trust to be intended by the parties from the nature and character of their transaction." *Intersparex Leddin KG v. Al-*

*Haddad*, 852 S.W.2d 245, 249 (Tenn. Ct. App. 1992) (citing *Burleson v. McCrary*, 753 S.W.2d 349, 352–53 (Tenn. 1988)).

Regarding the creation and application of resulting trusts, the Tennessee Supreme Court has adopted the following:

> The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment. Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.

*In re Est. of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993) (quoting 76 Am. Jur. 2d *Trusts* § 166 (1992)).

"To establish a resulting trust upon land, it is a general principle that the trust must arise at the time of the purchase, attach to the title at that time and not arise out of any subsequent contract or transaction." *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980) (citing *McClure v. Doak*, 65 Tenn. 364 (1873)). In recognition of Tennessee's adoption of a purchase-money resulting trust doctrine, we have stated:

> It is said that the source and underlying principle of all resulting trusts is the equitable theory of consideration. That theory is that the payment of a valuable consideration draws to it the beneficial ownership; that a trust follows or goes with the real consideration, or results to him from whom the consideration actually comes; that the owner of the money that pays for the property should be the owner of the property.

*Id.* at 584 (quoting *Greene v. Greene*, 272 S.W.2d 483, 487 (Tenn. Ct. App. 1954)).

The trial court's findings regarding Plaintiff' claim for a resulting trust read in pertinent part:

> The Court finds that Plaintiff admits that she did not actually make payment as part of the original transaction of purchase, nor did she incur an absolute obligation to pay as part of the original transaction of purchase. Undisputed facts establish that Plaintiff cannot prove an essential element of her claim

for resulting trust. Accordingly, Defendant is granted summary judgment on this point and Plaintiff's claims for resulting trust is [sic] DISMISSED with prejudice.

(Citations omitted).

As the trial court correctly found, it is undisputed that Plaintiff paid nothing toward the purchase of the Property in 1972, nor did she incur any obligation to pay as part of the original transaction of purchase. In fact, Decedent purchased the Property in 1972, fourteen years before he and Plaintiff married. Furthermore, there is no evidence in the record that Plaintiff knew Decedent in 1972 or that she had any knowledge of the Property at that time.

Nevertheless, Plaintiff argues that Tennessee law recognizes other types of resulting trusts beyond "purchase money resulting trusts." For this proposition, she cites, *inter alia*, *Saddler v. Saddler*, 59 S.W.3d 96 (Tenn. Ct. App. 2000), wherein the parents entered an agreement with their son *after* they purchased the property at issue. *Id.* at 99. The son would receive the property upon their death if the son agreed to, *inter alia*, leave the army and forego the army's helicopter pilot training program for which he had qualified, care for the property, and pay all of the debts his parents were unable to pay. *Id.* at 99–100.[5] Contrary

---

[5] The numerous facts supporting the son's claim of an enforceable agreement and resulting trust included the following, as recited in the *Saddler* opinion:

In support of his position that the Hancock Farm is subject to a resulting trust in his favor, Dwight Saddler contends the he had an oral agreement with his parents (John T. and Edwina Groom Saddler) providing that, in exchange for his work on the farm and assistance in paying off the farm debt, he would receive the Hancock farm upon their deaths. With respect to this alleged agreement, Dwight Saddler testified: (1) that, in February of 1968, he was drafted into the army and subsequently qualified for the army's helicopter pilot training program, which would require him to enlist in the service for an additional two years; (2) that, when he telephoned his parents to tell them about the program, his father informed him that he (John T. Saddler) was in financial difficulty and that the farm was in danger of foreclosure; (3) that his father proposed that, if he (Dwight Saddler) was willing to return to the farm as soon as possible, then upon the deaths of both of his parents, he would receive the Hancock Farm; (4) that, after agreeing to this proposal, he was sent to Vietnam; (5) that, during his service in the military, his mother sent letters to him approximately two or three times per week, many of which made reference to the aforementioned agreement; (6) that, toward the end of his tour in Vietnam, he was given the option of shortening the total length of his service if he agreed to extend the length of his tour; (7) that he accepted this option, completed his military service in September of 1969, and returned home to work full time on the family farm; (8) that he began a partnership arrangement with his father whereby they both worked on the farm and divided the farm income evenly; (9) that, although his father continued to pay the mortgage on the farm property, he (Dwight Saddler) incurred substantial debt in his own name for the benefit of the farming operation; (10) that, when his father's bank account for the farm became overdrawn, he (Dwight Saddler) paid these overdrafts; (11) that, on one or two occasions, he also paid the property taxes on the farm; (12) that, at the time of his father's

to the agreement, however, the property was devised to all of their children in his mother's will. *Id.* at 97–98.[6] But a holographic codicil in the mother's will stated, "If Dwight [son] still wants the farm Leonard and Paula [siblings] help him all you can for him to own it in his and his son's name." *Id.* at 98. When the will and codicil were admitted to probate, the son filed a complaint against his mother's estate, alleging that he was the owner of the property as the beneficiary of a resulting trust. *Id.*

Following the trial in *Saddler*, the trial court ruled that the son was the owner of the property as the beneficiary of a resulting trust. *Id.* at 100–01. The court emphasized the existence of evidence that the parents orally agreed that the son could have the farm at their death if he worked it and helped pay the debt on it and evidence that son returned to the farm and paid the farm's debts. *Id.*

On appeal, we summarized the burden of proof to establish a resulting trust as follows:

> A resulting trust may be proven, and is typically proven, by parol evidence. When a party seeks to prove the existence of a resulting trust by parol evidence, however, the level of proof required is more than a mere preponderance of the evidence. **In such a case, the proof of a resulting trust must be of the clearest, most convincing, and irrefragable character**. The testimony of a single, interested witness typically is insufficient to establish a resulting trust by clear, convincing, and irrefragable evidence. When the parol evidence of a resulting trust is in conflict with the terms of a written instrument, it is not essential that the evidence remove all reasonable doubt, but it must be so clear, cogent, and convincing that it overcomes the evidence to the contrary and the presumption that exists in favor of the terms of the written instrument.

*Id.* at 99 (citations omitted) (emphasis added).

We agreed with the trial court's finding of an agreement between the son and his parents. *Id.* at 101–02. We noted evidence that the son changed his tour of duty in Vietnam, invested labor on the farm, incurred substantial debt in his own name to maintain the

---

death in November of 1985, his mother (Edwina Groom Saddler) assured him that he would receive the Hancock Farm at her death; and (13) that he continued to work on the farm, manage the farm, and incur more debt for the benefit of the farm until his mother's death in May of 1997.

*Saddler*, 59 S.W.3d at 99–100.

[6] The father predeceased the mother after which she became the sole owner of the property. *Saddler*, 59 S.W.3d at 97.

farming operation, and paid the farm's taxes. *Id.* at 102. We also noted the holographic codicil in the mother's will. *Id.* at 102 n.1. Thus, the *Saddler* court approved the imposition of a resulting trust where an obligation was incurred *after* the original transaction—but only after the son met his "heavy burden" to prove that there was an agreement between him and his parents which entitled him to receive the property in question in return for the extensive obligations he incurred. *See id.* at 101–02.

Accordingly, as Plaintiff argues, a resulting trust may be established based on an oral agreement entered into *after* the property in question is acquired. *See id.* However, while a resulting trust may be proven by parol evidence, the evidence must be "clear, cogent and convincing." *King v. Warren*, 680 S.W.2d 459, 461 (Tenn. 1984). Moreover, "[t]he testimony of a single, interested witness typically is insufficient to establish a resulting trust by clear, convincing, and irrefragable evidence." *Story*, 166 S.W.3d at 184 (quoting *Saddler*, 59 S.W.3d at 99).

The facts of this case are distinguishable from *Saddler* because they fail to provide a basis for an agreement between Plaintiff and Decedent that would give rise to a resulting trust in the Property. To be specific, Plaintiff's testimony, which is the only evidence proffered to establish an agreement, is insufficient to even create a dispute of fact concerning the existence of an agreement upon which a resulting trust could be established. Because the *Saddler* case and others cited by Plaintiff are distinguishable from the facts of this case, they provide no basis for relief to Plaintiff.

For these reasons, we affirm the summary dismissal of Plaintiff's claim for a resulting trust.

## II. CONSTRUCTIVE TRUST

Plaintiff contends the trial court erred in summarily dismissing her claim for a constructive trust; she contends its decision was erroneously based on the conclusion that Plaintiff was required to prove that Defendant engaged in fraudulent conduct. Plaintiff also argues that the trial court erroneously disregarded the conduct of Decedent and his son, Rickie Stamps.

For her part, Defendant contends that Plaintiff, who bears the burden of proving Defendant's wrongdoing in the procurement of the Property by clear and convincing evidence, proffered no proof of fraud or other wrongful behavior by Defendant.

A constructive trust is another equitable device used by the courts to avoid an unjust result. *Story*, 166 S.W.3d at 184 (citation omitted). If a trial court has determined that a constructive trust should be imposed, the court may remove the property from the person holding title—the trustee—and put the property in trust for the benefit of the person harmed—the beneficiary. *Findley v. Hubbard*, No. M2017-01850-COA-R3-CV, 2018 WL

3217717, at *8 (Tenn. Ct. App. July 2, 2018) (citing *Tanner v. Tanner*, 698 S.W.2d 342, 346–47 (Tenn. 1985); *Browder v. Hite*, 602 S.W.2d 489, 492–93 (Tenn. Ct. App. 1980)).

In Tennessee, there are four circumstances in which the courts have instituted a constructive trust:

> (1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; (2) **where the title to property is obtained by fraud, duress or other inequitable means**; (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and (4) where a person acquires property with notice that another is entitled to its benefits.

*Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994) (emphasis added) (citations omitted). Only the second circumstance is alleged here.

As with a resulting trust, our courts require a higher degree of proof when a party seeks to establish a constructive trust as to real property based on parol evidence, indicating reluctance to contravene a written deed. *See Gray v. Todd*, 819 S.W.2d 104, 108 (Tenn. Ct. App. 1991) (quoting 76 Am. Jur. 2d *Trusts* § 637). "[T]he plaintiff has the burden of proving, by clear and convincing evidence, the existence of a constructive trust based on parol evidence." *Story*, 166 S.W.3d at 185 (citing *Browder*, 602 S.W.2d at 493).

Notably, "[a] constructive trust may only be imposed *against one* who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, has obtained an interest in property which he ought not in equity or in good conscience retain." *Story*, 166 S.W.3d at 185 (emphasis added) (quoting *Intersparex Leddin KG*, 852 S.W.2d at 249). Thus, a constructive trust cannot be imposed against a party who receives property in good faith and without notice of an adverse claim. *See Cont'l Grain Co. v. First Nat. Bank of Memphis*, 162 F. Supp. 814, 833 (W.D. Tenn. 1958) (citations omitted).

Here, the trial court expressly found that Plaintiff "presented no proof that would permit a finder of fact to conclude that [Defendant] . . . engaged in any fraudulent, wrongful or inappropriate behavior." Following a thorough review, we also find no evidence of fraud or other wrongful behavior by Defendant. Furthermore, it is undisputed that Defendant was not aware of the deed until after it had been executed and recorded.

For the foregoing reasons, we affirm the summary dismissal of Plaintiff's claim for a constructive trust.

## III. Relief from a Fraudulent Conveyance Under
## Tennessee Code Annotated § 31-1-105

Plaintiff contends the trial court erred in summarily dismissing her claims of fraudulent conveyance by interpreting Tennessee Code Annotated § 31-1-105 as applying only to situations where the surviving spouse has filed a petition for an elective share. Conversely, Defendant agrees with the trial court's ruling that § 31-1-105 does not provide any available relief for Plaintiff. We agree with the trial court and Defendant that the statute does not provide any available relief for Plaintiff but for other reasons.

The trial court summarily dismissed the claim for fraudulent conveyance under § 31-1-105 for the following reasons:

3. The Court finds that it is undisputed that the . . . only remaining claim stated in this action is to set aside a <u>distributive</u> share, and not to fund an elective share. [Plaintiff] has filed no claim for elective share against the Decedent . . . and the time has long passed for doing so. It is also undisputed that the Decedent died without a Will from which Plaintiff could elect, and also that no estate was ever opened for the Decedent.

. . .

6. The Court finds that the plain text of . . . § 31-1-105 after the 2002 amendments provided only one avenue of relief for an alleged fraudulent conveyance—such an alleged conveyance is voidable only to the "extent the other assets . . . are insufficient to fund and pay the elective share . . . [." ]The plain language of the statute provides no relief for an alleged fraudulent conveyance of a distributive share.

7. Neither counsel have cited any cases after the adoption of the 2002 amendments that indicate an action to set aside an alleged fraudulent conveyance of a distributive share is available under Tennessee statutory or common law, nor has the Court found any. In the absence of any authority other than the plain text of the statute, the Court applies the plain text of the law.

Tennessee Code Annotated § 31-1-105 provides:

Any conveyance made fraudulently to children or others, with an intent to defeat the surviving spouse of the surviving spouse's distributive or elective share, is, at the election of the surviving spouse, includable in the Decedent's net estate under § 31-4-101(b), and voidable to the extent the other assets in

- 11 -

the Decedent's net estate are insufficient to fund and pay the elective share amount payable to the surviving spouse under § 31-4-101(c).[7]

The plain language of the statute provides two forms of relief for a surviving spouse when there has been a fraudulent conveyance.[8] Under the first form of relief, the conveyance may not be set aside. Rather, the statute provides that any such conveyance may be "includable in the decedent's net estate under § 31-4-101(b)." Meaning, the statute provides for the value of the conveyance to be included in a decedent's net estate as calculated according to Tennessee's definition of a net estate.[9] Under the second form of relief, a fraudulent conveyance is "voidable to the extent the other assets in the decedent's net estate are insufficient to fund and pay the elective share amount payable to the surviving spouse under [§] 31-4-101(c)." Notably, either form of recovery under this statute ultimately requires a calculation of the decedent's net estate. Although other cases have been brought against the recipient of an alleged fraudulent transfer of real property under § 31-1-105, in each of those cases there was a pending action involving a decedent's estate in which a court was tasked with calculating the decedent's net estate. *See Cantrell v. Cantrell*, No. M2002-02883-COA-R3CV, 2004 WL 3044907, at *1, *3 (Tenn. Ct. App. Dec. 30, 2004); *Belch v. Alsup*, No. 02A01-9806-CH-00165, 1999 WL 292256, at *2–3 (Tenn. Ct. App. May 11, 1999); *Bales v. Snyder*, No. 03A01-9710-CH-00496, 1998 WL 481982, at *1 (Tenn. Ct. App. Aug. 18, 1998).

Here, Plaintiff does not seek an elective share; instead, she is only seeking a distributive share.[10] A "distributive share" is defined as "[t]he share that an heir or

---

[7] We are intrigued by the fact neither party discusses whether Tennessee Code Annotated § 31-4-102(a)(1) is applicable when both spouses are non-residents of Tennessee; here both were residents of Ohio. Although Decedent lived with his daughter in Tennessee during the last six months of his life, while his health was failing, neither party contends that he was a Tennessee resident at the time of his death. Nevertheless, assuming arguendo that § 31-4-102(a)(1) applies, we shall determine whether it affords Plaintiff any relief.

[8] Unlike claims based on traditional fraudulent conveyance principles as codified in the Uniform Fraudulent Transfer Act, the remedies afforded pursuant to § 31-1-105 are only available to the surviving spouse of a deceased spouse.

[9] Pursuant to Tennessee Code Annotated § 31-4-101(b): "The value of the net estate includes all of the decedent's real property, notwithstanding § 31-2-103, and personal property subject to disposition under the decedent's will or the laws of intestate succession, reduced by the following: secured debts to the extent that secured creditors are entitled to realize on the applicable collateral, funeral and administration expenses, and award of exempt property, homestead allowance and year's support allowance."

[10] Her rational for only seeking a distributive share is explained in her brief. "Because [Decedent]'s son, Rickie Erman Stamps, predeceased him without issue, [Decedent] left only his surviving spouse, Plaintiff, and his daughter, Defendant, upon his death. Under Tennessee's intestate succession laws, Plaintiff was entitled to a one-half interest in the Property. Plaintiff did not file a petition for elective share in Tennessee, as Plaintiff was entitled to a larger distributive share (one-half) pursuant to the intestacy

beneficiary receives from the legal distribution of an estate." *Distributive Share*, Black's Law Dictionary (11th ed. 2019). A surviving spouse's right to dissent and the circumstances surrounding a surviving spouse's distributive share of a decedent's real property are governed by the law of the state of the real property. *See* 1 Jack W. Robinson et al., *Pritchard on Wills and Administration of Estates* § 54 (7th ed. 2009) (explaining that the descent and heirship of real property are governed exclusively by the law of the place where the property is situated).

Under Tennessee's intestate succession statute, Plaintiff would have been entitled to either one-third or a child's share of Decedent's net estate, whichever is greater. *See* Tenn. Code Ann. § 31-2-104(a). Because Decedent was survived by only one child and his son had no issue, Plaintiff's distributive share would be one-half of Decedent's net estate. However, the amount of Plaintiff's distributive share cannot be ascertained because no one filed a petition for ancillary administration of Decedent's intestate estate in Tennessee and no one has been issued letters of administration.[11] Stated another way, there are no present means to ascertain Decedent's net estate under § 31-4-101(b). Accordingly, even if Plaintiff could establish a fraudulent conveyance, the current posture of this case precludes calculation of Decedent's net estate. As such, Tennessee Code Annotated § 31-1-105 can afford no relief to Plaintiff.

For the foregoing reasons, we affirm the summary dismissal of Plaintiff's claim under Tennessee Code Annotated § 31-1-105.

## IN CONCLUSION

For these reasons, we affirm the judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Virgie Stamps.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

statute than she would have received had she made the elective share election of forty percent." (Citations omitted).

[11] The policy of our law is to insist upon the legal formality of administration whenever any person dies leaving an estate to be collected, settled and distributed, either under a will or the statute. Robinson et al., *supra*, § 512.

- 13 -