Robert Malcolm KING, et al.,
Plaintiffs-Appellees,

v.

Billy James WARREN,
Defendant-Appellant.

Supreme Court of Tennessee,
at Knoxville.

Nov. 19, 1984.

R. Jerome Shepherd, Cleveland, for plaintiffs-appellees.

J. Arnold Fitzgerald, James C. Wasson, Dayton, for defendant-appellant.

## OPINION

FONES, Justice.

We granted the rule eleven application of defendant Billy James Warren to review the finding of the Court of Appeals that plaintiffs had established an oral trust in real estate by clear, cogent and convincing evidence.

Plaintiffs are the children of Paul King, deceased, and his second wife, Audrey Faye King. Millie King Hurley Warren was the daughter of Paul King and half-sister of plaintiffs. Defendant Billy King Warren was Millie's second husband, and he acquired the real estate involved in this suit as sole beneficiary of her will, upon her death in April, 1977.

In 1959, Millie married Collier Hurley of Houston, Texas, who had acquired considerable wealth in the oil business. In 1962, Millie purchased the real estate involved in this litigation and gave it to her father, Paul King. Millie and her husband co-signed a twenty-thousand dollar note of Paul King, secured by trust deed on the farm she had given him, and the money was used to build a homeplace on the farm for Paul King's second family. Paul King gave Millie a seven acre tract across the road from the farm where apparently Paul King's family had lived until the new house was built on the farm Millie gave her father. Millie remodeled that home and stayed there on her periodic visits to Tennessee.

Millie made the monthly payments on her father's note, and when he died, intestate in October, 1966, the balance due was approximately sixteen thousand dollars.

Audrey Faye King qualified as administratrix of the estate of Paul King, deceased. Apparently her husband had no assets other than the approximately ninety-nine acre farm and home that Millie had provided. The only income that the Paul King family had was a monthly social security benefit of one hundred and forty dollars. However, Audrey Faye testified that Millie sent her a check for two hundred and fifty dollars per month for almost two years following the death of Paul King.

In 1967 Audrey Faye King filed a petition in the Chancery Court of Rhea County seeking approval of a transfer of all of the interest of her four minor children and her interest as widow of Paul King in approximately ninety-eight acres of land to Millie, in consideration of Millie conveying her one-fifth interest in the new home on a tract of land of approximately .71 acres to the four minor children, subject to the widow's homestead and dower, paying off the mortgage on the farm and home, the funeral bill, and all debts and expenses of the estate, including the proceeding to approve the settlement. C.P. Swafford was appointed guardian ad litem of the minor children of Audrey and Paul King. The matter was duly presented and approved by the chancellor and an appropriate decree entered in 1968.

The oral trust was predicated solely upon the testimony of Audrey Faye King that she and Millie had a conversation on the front porch of the farmhouse one week after Paul King's death in October 1966. Her testimony, with respect to the words of the trust, was as follows:

Q Get down to the part about what Mrs. Hurley said.

A She would take the farm over, she would run it 'til the children were of age. Then when they became of age, the farm would be theirs and the equipment.

J. Polk Cooley testified that he represented Audrey Faye as administratrix of the estate, prepared the petition and presented

the settlement of the estate with Millie, and that at no time was there any mention whatever of a trust for Audrey Faye's children.

Audrey Faye testified that when they went to court in Athens, she, "Thought it was fixed 'til eventually it would be back to the children." She said that Cooley never discussed it with her—she just went to his office and signed. Cooley testified that he went to the farm several times, took a real estate appraiser, and a surveyor to get a metes and bounds description of the tract where the house was located and a roadway easement for the homeplace. He testified that he could remember sitting in the house talking to Audrey Faye and they "discussed, in detail, what was happening."

At the time this suit was brought, Audrey Faye was a party as next friend of one of her minor children. After defendant pled judicial estoppel, a non-suit was taken by Audrey Faye and an order was entered striking her as a party plaintiff in any capacity.

While the non-suit removed any issue as to the application of judicial estoppel, there remained the inconsistency of her position as a moving party in the settlement of the estate where Millie was given fee simple title to the farm, and her testimony that Millie declared a trust for her children in that property, almost two years before she acquired any title to the real estate.

We recently had occasion to discuss the law with respect to the establishment of an oral trust in real estate, affirming the requisites that the declaration must be made prior to or contemporaneous with a transfer of realty, must be proven by evidence that is clear, cogent and convincing, and that ordinarily, the testimony of a single, interested witness would not be sufficient to establish a trust by that quantum of proof. *Tansil v. Tansil*, 673 S.W.2d 131 (Tenn.1984); citing *e.g. Sanderson v. Milligan*, 585 S.W.2d 573 (Tenn.1979) and *Hunt v. Hunt*, 169 Tenn. 1, 80 S.W.2d 666 (1935).

The trial judge filed a written memorandum opinion wherein he made the following findings of fact:

"There is no doubt in the Court's mind but that Audrey Faye fully understood the proceedings of the Chancery Court to confirm the sale in 1968. The problem with the Court is, does her testimony that Millie said she wanted to take over the farm, pay the debts, and give the farm to the children when they were big enough to run it, amount to Millie holding it in trust for these plaintiffs?"

He later found that:

"The Court is convinced from the proof that there was a private understanding between Audrey Faye and Millie, prior to the bringing of the confirmation of sale suit in chancery. At least, Audrey Faye's understanding was that by signing over her homestead and dower, which was already under mortgage, she could save the farm for the children when Millie died. The Court is not sure Millie meant it in this fashion."

After these inconsistent findings, the chancellor concluded that Audrey Faye's "understanding" that the children would ultimately get the farm, was an enforceable agreement and declared a "resulting trust in the farm." He made no finding that the plaintiff's had established the trust by clear, cogent and convincing evidence, nor is there any reference whatever in his memorandum opinion to that requirement of the law.

The Court of Appeals found that the deposition of Millie's first husband, Collier Hurley, corroborated Audrey Faye's testimony about the establishment of a trust. We disagree. Hurley's testimony was to the effect that Millie had made statements indicating that she intended to leave any Tennessee property she had to her half-brothers and half-sisters. The oldest half-brother and a neighbor, who was a lifetime friend of Millie's, testified to similar statements, but those sentiments expressed by Millie at various times, mostly in the nineteen sixties, interpreted most favorably to the plaintiffs, were simply that the declarer had a present intention of remembering her relatives in her will. Those casual state-

ments wholly fail to corroborate the establishment of a trust on October 11, 1966, to hold the farm in trust for the children of Paul King until they reached their majority, and deliver fee simple title to them at that time.

We hold that the record supports the finding of the chancellor that Audrey Faye fully understood the proceedings of the chancery court to confirm the sale in 1968. That finding presented an insurmountable obstacle to a judicial determination that the evidence in this record established the declaration of an oral trust on October 11, 1966, by clear, cogent and convincing proof.

The judgment of the Court of Appeals is reversed and this suit is dismissed at the cost of the plaintiffs.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.