IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 2, 2024

## DEBBIE LYNN SIMMONS, ET AL. v. DEBORAH MATLOCK BASS, ET AL.

Appeal from the Chancery Court for Houston County
No. 2021-CV-893, 2021-CV-894  Suzanne Lockert-Mash, Judge

_____

### No. M2023-00275-COA-R3-CV

_____

Appellees, a married couple at the time, purchased two properties.  Appellants, Husband's adult daughters from a previous relationship, sought imposition of resulting trusts on the respective properties.  Appellants, each of whom lived in one of the properties, maintained that they had agreements with their father whereby they would own the properties so long as they paid all expenses thereon.  Appellee/Wife disputed such arrangement and maintained that the disputed properties were marital properties.  Because of the suspect circumstances surrounding the purchases of the properties and the disputed testimony regarding any agreements by and between Husband and Appellants, Wife argued that the properties were not subject to the imposition of the equitable remedy of resulting trusts. The trial court denied Appellants' respective petitions to establish resulting trusts, and they appeal.  Because Appellants failed to meet the burden of proof to establish resulting trusts, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT, and KRISTI M. DAVIS, JJ., joined.

Jacob P. Mathis and Tiffany D. Leffler, Clarksville, Tennessee, for the appellants, Maranda Teague and Debbie Lynn Simmons.

Sydney A. Franklin, Dickson, Tennessee, for the appellee, Deborah Matlock Bass.

Christopher J. Pittman, Clarksville, Tennessee, for the appellee, Jimmy Lynn Bass.

# OPINION

## I. Background

Jimmy Bass and Deborah Bass (together "Appellees") married in 2003. In 2020, they began divorce proceedings in the Chancery Court for Dickson County (the "divorce court"). Maranda Teague and Debbie Lynn Simmons (together "Appellants") are Mr. Bass' adult children from a previous relationship. On June 28, 2017, Mr. Bass purchased a home at 6170 Highway 147, Stewart, Tennessee (the "Stewart Property"). The warranty deed on the Stewart Property lists the owner as "Jimmy L. Bass, a married individual." On the same day, Mr. Bass executed a promissory note in the amount of $31,000.00 in favor of Cumberland Bank & Trust. The note, which was not signed by Mrs. Bass, was secured by a deed of trust on the Stewart Property. Debbie Simmons moved into the Stewart Property. She testified that she and Mr. Bass had an agreement that the Stewart Property would be hers if she paid the bills and maintained the home; however, there is no written agreement between Mr. Bass and Ms. Simmons. Ms. Simmons stated that she had no agreement with Deborah Bass.

On or around August 9, 2017, using a second mortgage on their marital residence, Appellees purchased property at 275 Day Lane, Tennessee Ridge, Tennessee (the "Tennessee Ridge Property"). Maranda Teague moved into the Tennessee Ridge Property. Ms. Teague claims that she, like Ms. Simmons, had an arrangement where she would pay the expenses for the Tennessee Ridge Property, and it would belong to her. To this end, Ms. Teague testified that she deposited $550.00 per month (beginning in September 2017) into an account at Regions Bank. It is undisputed that Appellees sold their marital residence in December of 2020 and used those funds to pay off the indebtedness on the Tennessee Ridge Property. Even after the mortgage was satisfied, Ms. Teague claims that she continued to make the monthly payments of $550.00. There is no written record of the foregoing arrangement.

Prior to the filing of this lawsuit, Appellees began divorce proceedings in Dickson County. According to the final order in this case, Appellants "filed a motion to intervene [in the divorce court] in regard to the ownership of the two properties that are subject to this lawsuit. The [divorce court] ruled that the properties are marital property and denied the [Appellants'] motion to intervene."

Having been denied relief in the divorce court, on October 12, 2021, Ms. Simmons filed a complaint in the Chancery Court for Houston County (the "trial court"). On the same day, Ms. Teague filed a separate complaint in the trial court. Both Appellants asserted causes of action for unjust enrichment and equitable estoppel and asked the trial court to impose a resulting trust on the Stewart Property and the Tennessee Ridge Property, respectively.

On December 15, 2021, Mrs. Bass filed answers to both complaints. In her answers, Mrs. Bass denied any knowledge of an arrangement between either of the Appellants and Mr. Bass. She further asserted that she and Mr. Bass were the owners of the Stewart Property and the Tennessee Ridge Property.[1] On January 4, 2022, Mr. Bass filed answers to both complaints, wherein he asserted that neither property was a marital asset and stated that the Stewart Property was intended to be Ms. Simmons' property, and the Tennessee Ridge Property was intended to be Ms. Teague's property. By separate orders entered on August 17, 2022, the Appellants' cases were consolidated.

Following a hearing on October 24, 2022, the trial court entered an order on February 10, 2023. In relevant part, the trial court held that

> [Ms.] Simmons and Mr. Bass did not consult Mrs. Bass when the [Stewart] [P]roperty was purchased. Upon finding out about the [Stewart Property], Mr[.] Bass told [Mrs. Bass] that he bought it for investment purposes. [Concerning] the [Tennessee Ridge Property] that [Ms.] Teague is living in[, Mrs. Bass] testified that it was for investment purposes. After the note was paid off using funds from the sale of Mrs. Bass' home, Mrs. Bass still has not received any payments from [Ms.] Teague. There is presently a pending divorce and relations between Mrs. Bass and her husband and step-daughters are acrimonious at best. From the testimony, it appears there may be some collusion among Mr. Bass and his daughters as to the transfer of these properties. The [divorce court] has ruled that these properties are marital property and denied the Motion to Intervene.
>
> Based on the above this Court declines to place the properties in a Resulting Trust . . . .

Ms. Teague and Ms. Simmons appeal.

## II. Issues

In their joint brief, Appellants raise the following issues for review:

1. Whether the trial court made sufficient findings of fact and conclusions of law in its Final Order?

2. Whether there was sufficient evidence to support a legal finding of a resulting trust for each property?

---

[1] Mrs. Bass also filed motions for sanctions against both Appellants. The trial court denied the motion in its final order, and no issue was raised concerning this decision.

- 3 -

## III. Standard of Review

This case was tried by the court sitting without a jury. As such, our review of a trial court's findings of fact is *de novo* on the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); ***Armbrister v. Armbrister***, 414 S.W.3d 685, 692 (Tenn. 2013). We review a trial court's conclusions of law *de novo*, according them no presumption of correctness. ***Id.*** at 692; ***Rigsby v. Edmonds***, 395 S.W.3d 728, 734 (Tenn. Ct. App. 2012). To the extent necessary, we expand our discussion of the standards of review relevant to the specific issues raised as we discuss those issues *infra*.

## IV. Analysis

### A. Sufficient Findings

We first address Appellants' contention that the trial court's findings are insufficient. Tennessee Rule of Civil Procedure 52.01 provides that,

> [i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment . . . .

Tenn. R. Civ. P. 52.01. The Tennessee Supreme Court has noted that "[t]here is no bright-line test" for assessing the sufficiency of the trial court's factual findings, but they "'must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" ***Lovlace v. Copley***, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C *Federal Practice and Procedure* § 2579, at 328).

In their brief, Appellants argue that

> the trial court outlined a narrative of facts however instead of applying those facts to a legal standard, conclusively stated that it was declining to place the properties in a Resulting Trust. The trial court does not articulate how it reaches its conclusion, nor how the narrated facts are not sufficient for a finding of Resulting Trust. The trial court does not cite any legal precedent or findings to support its ruling. Further, the trial court incorrectly stated that the properties in question had already been ruled, by a neighboring court, marital property of Appellees. This is simply untrue. The properties were never determined to be marital property. The order from Dickson County [divorce court] . . . states that in fact there had not been a determination of marital property to date, because the divorce is still ongoing and pending.

There has not been a final hearing in the divorce, and as such, there was no such determination of marital property for the trial court to incorrectly rely on in making is erroneous conclusion.

As discussed below, a resulting trust is a creature of equity. As such, a trial court's decision concerning whether to impose such trust rests on the specific facts of the case. Here, the trial court's order contains a detailed recitation of the facts and evidence adduced at the hearing. In view of the fact-driven nature of this case, we would expect the trial court to outline the relevant facts. So, contrary to Appellants' contention that the trial court's order merely narrates the case, we conclude that the trial court's order outlines the relevant facts that the court relies on in making its decision.

As to Appellants' contentions that the trial court did not "cite any legal precedent," and failed to "articulate how it reache[d] its conclusion," we again note that due to the equitable nature of resulting trusts, there are no bright-line legal requirements necessary to establish them. Rather, the court considers the acts and conduct of the parties and the circumstances and facts that exist at the time of the transaction from which the trust allegedly arises. As such, the absence of "legal precedents" in the trial court's order is not fatal to our review.

As to Appellants' assertion that the trial court's decision rests on its erroneous statement that the divorce court "has ruled that these properties are marital property and denied the Motion to Intervene," we note that the divorce court's order denying intervention is not contained in our appellate record. However, portions of the order were read into this record by Mrs. Bass' counsel. As read into evidence, in denying Appellants' motion to intervene in the divorce matter, the divorce court stated, in relevant part:

> The [Appellants'] motion [to intervene in the divorce matter] alleges that the Respondent, Jimmy Lynn Bass, entered into an agreement to allow each of his daughters. . . to acquire an interest in certain pieces of real property by virtue of each of them living in the subject properties and making payments that went to the satisfaction of the indebtedness that encumbered the properties.
> The Court finds that the Petitioner, Deborah Matlock Bass, was not a party to any such agreement and had no knowledge that any such agreement exists and . . . the Respondent[] had no basis to bind his wife to some oral agreement that may have existed between himself and his daughters. Further, the Respondent is judicially estopped from asserting any ownership of the subject property vested with either Maranda Teague or Debbie Teague. . . as he and [Mrs. Bass] have asserted sole ownership of the properties in this divorce matter to the extent the Court has previously determined the properties are marital and subject to an equitable division of Deborah Matlock Bass and Jimmy Lynn Bass.

Further, the Court finds that any claim including but not limited to equitable estoppel is against Jimmy Bass and not against Deborah Matlock Bass. It is therefore ordered that the motion to intervene is denied and that the moving parties, Maranda Teague and Debbie Lynn Simmons, are free to proceed in a separate action against their father, Jimmy Lynn Bass, for reimbursement of monies that they have paid.

Mr. Bass' attorney objected to the foregoing order, stating that the order "was replaced by a new order. I would dispute that [the divorce court] classified these properties as marital property." Mr. Bass' attorney then read from the "new order," which allegedly was entered by the divorce court in relation to its "granting the motion to alter or amend,"[2] to-wit:

(As Read) While . . . the daughters . . . may very well have a cause of action against Mr. Bass, they do not necessarily have one against Ms. Bass sufficient to be allowed to intervene [in the divorce matter] . . . .

***

While the actual identification of marital property has not yet taken place since there has not been a final hearing, the Court has, in fact, previously ordered all marital property, once identified, to be sold . . . . Certainly, the intervenors, which is [sic] the daughters, can bid on the properties themselves or can file an action to enforce their claims for a resulting trust. (Reading Ends)

Assuming that the foregoing is a valid recitation of the divorce court's orders, one could infer that the properties were designated as marital property. The first order makes that ruling clear, and even in view of the statement in the second order that the "actual identification of marital property has not yet taken place," the divorce court's statement that the divorce court "previously ordered all marital property . . . to be sold," coupled with its statement that "the daughters can bid on the properties themselves," could be read to mean that the disputed properties are marital property that will be sold. Regardless, the designation of these properties as marital property is not dispositive of the equitable question of whether they should be held in a resulting trust. More importantly, there is no indication that the designation of the properties as marital property was the only fact the trial court relied on in reaching its ultimate decision. The trial court's order recites almost four pages of facts before it states that the divorce court "has ruled that these properties are marital." However, in the last paragraph, the trial court states that, "**[b]ased on the above** this Court declines to place the properties in a Resulting Trust . . ." (emphasis added). We read "the above" to include all of the relevant facts outlined in the trial court's order. So, even allowing, *arguendo*, that the trial court misstated the fact that the properties were

---

[2] This order also is not included in the appellate record.

determined to be marital, as set out in its order, there is additional evidence to support the trial court's ruling. As such, the trial court's statement that the properties are marital, even if incorrect, would be harmless error. *See, e.g., Gentry v. Walls*, No. 01-A-019105-CV-00190, 1991 WL 254561, at *1 (Tenn. Ct. App. Dec. 4, 1991) ("The test for harmless error is found in Rule 36, Tenn. R. App. P., which says a judgment should not be set aside unless, considering the whole record, the error more probably than not affected the judgment."). From the foregoing, we conclude that the trial court's order is sufficient to allow this Court to conduct a meaningful review of its decision to deny the resulting trusts. We now turn to that task.

## B. Resulting Trusts

This Court has explained:

This Court reviews the issue of whether a resulting trust has been formed *de novo* with no presumption of correctness. **Story v. Lanier**, 166 S.W.3d 167, 184 (Tenn. Ct. App. 2004). A resulting trust has been defined as follows:

> Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called presumptive trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions. They are, however, generally called resulting trusts, because the trust is the result which Equity attaches to the particular transaction.

**Smalling v. Terrell**, 943 S.W.2d 397, 400 (Tenn. Ct. App. 1996) (quoting Gibson's Suits in Chancery § 382 (Inman, 7th ed. 1988)). As the Tennessee Supreme Court has stated:

> The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment. Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no

intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.

While resulting trusts generally arise (1) on a failure of an express trust or the purpose of such a trust, or (2) on a conveyance to one person on a consideration from another—sometimes referred to as a "purchase-money resulting trust"—they may also be imposed in other circumstances, such that a court of equity, shaping its judgment in the most efficient form, will decree a resulting trust—on an inquiry into the consideration of a transaction—in order to prevent a failure of justice. However, the particular circumstances under which a resulting trust may arise varies from jurisdiction to jurisdiction.

*In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993) (quoting 76 Am. Jur. 2d Trusts § 166, pp. 197-98 (1992)). However, the overriding principle pertaining to resulting trusts is that "the trust must arise at the time of the purchase, attach to the title at that time and not arise out of any subsequent contract or transaction." *In re Estate of Jones*, 183 S.W.3d 372, 379 (Tenn. Ct. App. 2005) (quoting *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980)); *see also* *Frazier v. Pomeroy*, No. M2005-00911-COA-R3-CV, 2006 WL 3542534, at *13 (Tenn. Ct. App. Dec. 7, 2006); *Smalling v. Terrell*, 943 S.W.2d [at] 400 [].

Resulting trusts can be proven by parol evidence, *Smalling*, 943 S.W.2d at 400 (citing *Estate of Wardell*[*, ex rel. Wardell v. Dailey*], 674 S.W.2d [293,] 295 [(Tenn.Ct.App.1983)]; *Bright v. Bright*, 729 S.W.2d 106, 110 (Tenn. Ct. App. 1986)), with the following caveat:

A trust may rest upon parol agreement where the declaration of trust is made prior to or contemporaneous with the transfer of the interest in realty. *Tansil v. Tansil*, 673 S.W.2d 131, 132 (Tenn. 1984). Ordinarily, the testimony of a single, interested witness would not be sufficient to establish a trust by clear, cogent and convincing evidence. *King v. Warren*, 680 S.W.2d 459 (Tenn. 1984).

*St. Clair v. Evans*, 857 S.W.2d 49, 51 (Tenn. Ct. App. 1993). "The parol testimony [may be] admitted, not to show an agreement to purchase for another, but to show that the purchase money was paid by the party claiming, notwithstanding the deed was taken in the name of another person." *Justice v. Henley*, 27 Tenn. App. 405, 410, 181 S.W.2d 632, 634 (Tenn. Ct. App.

- 8 -

1944) (quoting **Perkins v. Cheairs**, 61 Tenn. 194, 201 (Tenn. 1872)). Additionally, this Court has stated the following:

> "A trust results from the acts, and not from the agreements, of the parties, or rather from the acts accompanied by the agreements; but no trust can be set up by mere parol agreements, or, as has been said, no trust results merely from the breach of a parol contract; as if one agrees to purchase land and give another an interest in it, and he purchases and pays his own money, and takes the title in his own name, no trust can result." 1 Perry on Trusts, (4 Ed.), sec. 134.

> "It is a familiar rule that a trust must result, if at all, at the instant the deed is taken and the legal title vests in the grantee. No oral agreements, and no payments before or after the title is taken, will create a resulting trust, unless the transaction is such that, at the moment the title passes, a trust will result from the transaction itself. There must be an actual payment from a man's own money, or what is equivalent to payment from his own money, to create a resulting trust." **Clark v. Timmons et al.** (Tenn. Chy. App.), 39 S. W., 534, 535.

**Walker v. Walker**, 2 Tenn. App. 279, 291 (1925). In other words, "a mere parol promise or an agreement by one person to purchase land and give another an interest therein" cannot give rise to a resulting trust. **Greene v. Greene**, 272 S.W.2d 483, 488 (1954). Rather, "[t]he trust arises, if at all, from the fact of payment of the consideration by the *cestui que* trust, and not from any agreement of the parties." **Walker v. Walker**, 2 Tenn. App. 279, 291 (1925). "Moreover, it must be shown that the beneficiary actually made payment, or incurred an absolute obligation to pay, as part of the original transaction of purchase." **Rowlett v. Guthrie**, 867 S.W.2d 732, 735 (Tenn. Ct. App. 1993) (citing **Livesay v. Keaton**, 611 S.W.2d 581, 584 (Tenn. App.1980)).

**Patterson v. Patterson**, No. M2016-00886-COA-R3-CV, 2017 WL 1433310, at *5-*6 (Tenn. Ct. App. Apr. 20, 2017). With the foregoing in mind, we turn to review the evidence regarding the two properties.

### Stewart Property

The Stewart Property was purchased in the name of "Jimmy L. Bass, a married individual." According to the testimony of Terri Bradford, a former employee of Cumberland Bank & Trust, the circumstances surrounding the execution of the promissory

note and deed of trust on the Stewart Property were as follows:

> Q [to Ms. Bradford]. So you did documents [*i.e.*, the promissory note and deed of trust] to where [sic] Debbie Bass Simmons, [Mr. Bass'] daughter, was buying a piece of a property; is that correct?
> A. No.
> Q. Jimmy purchased the property. That's what I asked at the beginning. Mr. Bass bought the property; is that correct?
> A. Correct.
> Q. Only Mr. Bass?
> A. Only Mr. Bass.
> Q. He was married at the time?
> A. He was married at the time.
> Q. And he bought the property at 6170 Highway 147, Stewart, Tennessee?
> A. Correct.
> Q. The loan was in his name?
> A. The loan was in his name.

Ms. Bradford further testified that she had no dealings with Mrs. Bass, and only Mr. Bass and his daughter, Ms. Simmons, were present when the Stewart Property documents were executed. Both Mr. Bass and Ms. Simmons testified that they agreed that Ms. Simmons would ultimately take title of the Stewart Property so long as she paid the mortgage, taxes, upkeep, and insurance (the homeowner's policy was in the name of Mr. Bass and Ms. Simmons) on the property. Ms. Simmons testified that she paid these expenses, to-wit:

> Q. Ms. Simmons, did you pay [Mrs.] Bass any rent money?
> A. No.
> Q. When you made a payment, who did you take the payment to?
> A. The bank. Cumberland Bank.
>
> ***
>
> Q. Okay. Do you know how much your mortgage payment was that you were paying?
> A. I still pay it. It's 360-something, I believe.
> Q. And the property taxes on the house, have you paid those?
> A. Yes.
>
> ***
>
> Q. Okay. And as far as insurance on the house, do you pay for that?
> A. Yes.

Ms. Simmons also testified that she paid for improvements to the Stewart Property.

- 10 -

However, as noted above, "the testimony of a single, interested witness would not be sufficient to establish a trust by clear, cogent and convincing evidence." ***King***, 680 S.W.2d at 459; *see also **Saddler v. Saddler***, 59 S.W.3d 96, 99 (Tenn. Ct. App. 2000) (citations omitted) ("[T]he proof of a resulting trust must be of the clearest, most convincing, and irrefragable character. The testimony of a single, interested witness typically is insufficient to establish a resulting trust by clear, convincing, and irrefragable evidence."). That being said, we note that Ms. Bradford's testimony appears to corroborate Ms. Simmons', to-wit:

> Q [to Ms. Bradford]. And what did Ms. Simmons indicate to you at the time this loan was taken out?
> A. It was her home.
> Q. Okay. And after she indicated that to you, once payments began being made—at least when you were involved—who was making those payments?
> A. Debbie. Debbie Lynn.

The problem with this testimony is that Ms. Simmons was the person reporting the foregoing information to Ms. Bradford. However, the real impediment to the creation of a resulting trust is the fact that Mrs. Bass knew nothing about the purchase of the Stewart Property, much less about the alleged agreement between Ms. Simmons and Mr. Bass. As Mrs. Bass testified, "I didn't know about [Mr. Bass' purchase of the Stewart Property] until the day after we closed on the [Tennessee Ridge Property] . . . . Had I known, I would have said stop because I was being deceived." Indeed, in her testimony, Ms. Simmons concedes that she had no agreement with Mrs. Bass:

> Q. Did you have an agreement with either of the Basses?
> A. With my dad.
> Q. Did you ever have an agreement with Ms. Bass?
> A. No.

The foregoing testimony lends credence to the statement in the trial court's final order that, "[T]here may be some collusion among Mr. Bass and his daughters as to the transfer of these properties." It is well settled that "'[r]esulting trusts are those which arise where the legal estate is . . . acquired, **without bad faith**, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title.'" ***In re Estate of Wardell***, 674 S.W.2d at 295 (quoting Gibson's Suits in Chancery, § 382 (6th ed.1982)) (emphasis added). While we decline to discuss whether the circumstances surrounding the Stewart Property rise to the level of "collusion," there is certainly evidence that Ms. Simmons and Mr. Bass proceeded in bad faith as they failed to inform Mrs. Bass of the purchase of the property, much less any arrangement regarding ownership of same. It is a well-settled maxim that "[one] who seeks Equity must do Equity, and [one] who has done inequity shall not have Equity." *See **Segelke v. Segelke***, 584 S.W.2d 211, 214 (Tenn. Ct. App.1978) (quoting Gibson's Suits in Chancery, § 970 (5th ed.1956)). Here, there is a shadow of inequity on the part of Ms. Simmons and Mr. Bass that clouds Ms. Simmons'

burden to provide "clear," "cogent," "convincing," and "irrefragable" evidence that equity demands a resulting trust. *King*, 680 S.W.2d at 459; *Saddler*, 59 S.W.3d at 99. Accordingly, we affirm the trial court's denial of a resulting trust over the Stewart Property.

## Tennessee Ridge Property

It is undisputed that the Tennessee Ridge Property was purchased with marital funds. As Mr. Bass testified:

> Q [to Mr. Bass]. Now, the Tennessee Ridge [P]roperty, you took . . . a home equity loan out on property that you and [Mrs.] Bass owned and purchased [the Tennessee Ridge Property]?
> A. Yes, ma'am.
> Q. You took a home equity loan and paid cash for that property, correct?
> A. Yes, ma'am.

Mrs. Bass testified that the Tennessee Ridge Property was bought as an investment property, but Appellees allowed Ms. Teague to live there, to-wit:

> Jimmy and I decided to buy [the Tennessee Ridge Property] as an investment property. [Ms. Teague] could live there. When she found something she wanted bigger, we'd just continue to rent it or we could sell it. Either way, that was the way I went into it.

Mrs. Bass testified that she prepared month-to-month leases for both properties and asked Mr. Bass to have the Appellants sign them, but no lease(s) were signed. Nonetheless, it is undisputed that Ms. Teague deposited $550.00 per month into an account at Regions Bank that was held jointly by Appellees. Then, approximately $549.00 per month was automatically debited from the Appellees' joint account to pay the home equity line of credit ("HELOC") that was used to pay the purchase price for the Tennessee Ridge Property. However, Mrs. Bass testified that there were months when Ms. Teague did not pay the $550.00, which caused Appellees to have to sell marital assets, *i.e.*, jointly-owned livestock, to satisfy the HELOC payments, to-wit:

> Q. Did your husband ever make statements to you that [Ms. Teague was] either behind or didn't have the money to make the payment?
> A. He did.
> Q. And what were the statements?
> A. He said he would pay it and [Ms. Teague] would pay him back.
> Q. Okay. And you took him at his word?
> A. Yeah.
> Q. So the money that would have been paid towards [HELOC, which was used to purchase the Tennessee Ridge Property] was your money, yours and

Mr. Bass's money?
A. Yeah. I mean, I considered it rent . . . .

\*\*\*

Q. Was there ever a conversation about selling livestock to pay payments on the two rental properties?

\*\*\*

A. Yes.
Q. To your knowledge, was that done?
A. Yes, to my knowledge, it was.

No records were admitted to show the deposits and withdrawals from the Appellees' joint account at Regions Bank, nor were any documents admitted concerning the terms of Appellees' HELOC. Nonetheless, it is undisputed that, when Appellees' marital residence was sold, approximately $52,749.34 of the proceeds from that sale was used to pay off the HELOC, *i.e.*, the debt remaining on the purchase of the Tennessee Ridge Property. Ms. Teague testified that, even after the HELOC was paid off, she continued to make deposits to Appellees' joint account. Again, no bank records were admitted to corroborate her statement, and "the testimony of a single, interested witness would not be sufficient to establish a trust by clear, cogent and convincing evidence." ***King***, 680 S.W.2d at 459; ***Saddler***, 59 S.W.3d at 99. Indeed, Mrs. Bass' testimony contradicts Ms. Teague's. Specifically, Mrs. Bass testified that she never received any money from Ms. Teague after the HELOC was paid, to-wit:

Q. After the [marital] property was sold [and a portion of the funds were used to pay off the HELOC], have you received any payment [from Ms. Teague]?
A. No.
Q. Did you get reimbursed for the . . . $52,795.34 taken out of the sale of your primary residence to pay [the HELOC]?
A. I've got nothing since December of 2020. [Ms. Teague has] been living in a house that's half mine rent-free . . . [Ms. Teague] didn't make the December payment, so it shows one payment late. She made the November payment. She knew [the marital property] was going to sell, so she didn't even pay the rent payment for December.

More damaging to Ms. Teague's position is Mrs. Bass' testimony that Ms. Teague withdrew funds from the Regions Bank account without Mrs. Bass' knowledge. As Mrs. Bass stated:

Q [to Mrs. Bass]. Okay. And what happened to that checking account at Regions Bank where [the HELOC payments were] automatically drafted out?

A. Well, supposedly, [Ms. Teague] was [Mr. Bass'] [Power of Attorney ("POA")] for a period of time. . . .

\*\*\*

Q. I asked you what happened to the account where the money [*i.e.*, Ms. Teague's monthly payments of $550.00] was going. Was that account closed?

A. It was closed out by Maranda [Teague] signed as [Mr. Bass'] POA.

\*\*\*

Q. And it was closed using a power of attorney?

A. Uh-huh. (Affirmative).

\*\*\*

Q. And whose name was subscribed to—

A. Her name. We've got a canceled [check].

Q. Who is "her"?

A. I'm sorry. Maranda Teague.

Q. Okay. So you [*i.e.*, Mrs. Bass] had no access to an account to get the money.

\*\*\*

A. Right.

As noted above, "a mere parol promise or an agreement by one person to purchase land and give another an interest therein" cannot give rise to a resulting trust. *Patterson*, 2017 WL 1433310, at 6 (citing *Greene*, 272 S.W.2d at 488). Rather, "it must be shown that the beneficiary actually made payment, or incurred an absolute obligation to pay, as part of the original transaction of purchase." *Id.* (citing *Rowlett*, 867 S.W.2d at 735 (citation omitted)). Here, the purchase money for the Tennessee Ridge Property was derived from a HELOC on the marital residence, so there can be no dispute that Ms. Teague neither paid the purchase price nor "incurred an absolute obligation to pay." While it appears that Ms. Teague did make some monthly payments to Appellees' joint account, and a portion of the HELOC debt was paid from the same account, Ms. Teague apparently withdrew funds (in what amount we do not know) from that account. Furthermore, it is undisputed that marital funds from the sale of the marital residence were used to satisfy more than $52,000.00 of

the purchase-price debt on the Tennessee Ridge Property. Given the competing testimonies in this case, and the totality of the circumstances surrounding the purchase of the Tennessee Ridge Property, we conclude that Ms. Teague failed to meet her burden to provide the "clearest, most convincing, and irrefragable" "proof of a resulting trust." ***Saddler***, 59 S.W.3d at 99 (citations omitted). Accordingly, we affirm the trial court's decision not to impose a resulting trust on the Tennessee Ridge Property.

## V. Conclusion

For the foregoing reasons, the trial court's order is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, Debbie Lynn Simmons and Maranda Teague, for all of which execution may issue if necessary.


         s/ Kenny Armstrong
         KENNY ARMSTRONG, JUDGE